798 P.2d 1057

**Linda PERKINS, Petitioner–Appellant,**

v.

**Wayne ROWSON, Respondent–Appellee.**

**No. 11674.**

Court of Appeals of New Mexico.

Aug. 2, 1990.

Certiorari Denied Sept. 18, 1990.

William N. Henderson, Mary E. Lebeck, Cynthia A. Fry, Lebeck & Fry, P.A., Albuquerque, for petitioner-appellant.

William J. Cooksey, Janelle Stamper, Dubois, Caffrey, Cooksey & Bischoff, P.A., Albuquerque, for respondent-appellee.

## OPINION

ALARID, Judge.

Mother appeals from the order of the trial court requiring her to pay $225 a month in child support. Mother and father were divorced in July 1987. Under the

terms of the final decree, mother and father were declared to be the joint legal custodians of their children. Father was the primary physical custodian, and mother was given substantial visitation during times detailed in the decree. The decree provided that mother would not pay child support to father even though he was the primary custodian of the children. However, the decree specifically recognized that the court could set child support later, upon a material change of circumstances.

Sometime after the final decree, mother filed a motion to enforce certain provisions of the final decree and to establish visitation. Father filed a response to this motion and also filed a motion to enforce the final decree, clarify visitation, and for an award of child support. The trial court held an evidentiary hearing on the various issues raised in these proceedings. With respect to support, the trial court found that NMSA 1978, Section 40-4-11.1 (Repl.Pamp. 1989) (Section 11.1), required consideration of the potential income earning ability of an unemployed parent, and that there was ample basis to impute income to mother in the amount of $850 a month, based on her employment potential and prior work history. Thus, the trial court ordered mother to pay $225 a month to father as child support for the months during which the children were living with father.

On appeal mother argues, inter alia, that the trial court erred in ordering her to pay child support because father failed to show that there had been a substantial change of circumstances materially affecting the welfare of the children since the previous determination of mother's support obligation. Because this proceeding was filed after Section 40-4-11.1 became effective, we must necessarily determine whether such a showing is required before the trial court can modify a parent's support obligation to conform to the requirements of the statute. We hold that a showing of a substantial change in circumstances is still required before the trial court can modify a parent's support obligation. Because father failed to show a substantial change in circumstances, we reverse the trial court. We decline to award mother attorney fees.

## I. The Circumstances of the Parties Have Not Changed Substantially.

Prior to the enactment of Section 11.1, a trial court could not modify a parent's child support obligation unless the party seeking the modification showed that there had been a substantial change of circumstances materially affecting the welfare of the child that had occurred since the previous adjudication of support. *See Spingola v. Spingola*, 91 N.M. 737, 580 P.2d 958 (1978); *Unser v. Unser*, 86 N.M. 648, 526 P.2d 790 (1974). We refer to this as the traditional changed circumstances requirement.

The findings of fact and conclusions of law entered by the trial court refer to a number of matters as changed circumstances. However, we have compared these findings with the terms of the original decree. In fact, the specific items designated by the trial court as changes are, almost without exception, matters that the final decree ordered be handled in this fashion. The only matters that have changed since the final decree are not substantial, and thus do not constitute a "substantial change of circumstances, materially affecting the welfare of the child."

On this state of the record, it is apparent that, as a matter of law, there has been no substantial change in mother's circumstances since the prior decree. Mother was a student at the time of the original decree; she was still a student, and had not yet attained her bachelor's degree at the time of the later order. The fact that mother has made additional progress toward her degree is not a sufficient change of circumstances because modifications of child support cannot be based on changes that might occur in the future. *See Henderson v. Lekvold*, 95 N.M. 288, 621 P.2d 505 (1980). The trial court found as fact that mother received a sum of cash to buy her out of the family home; however, the terms under which father bought out mother's share of the family residence were set in the original decree. Similarly, the trial court's findings relating to mother's work history and ability to work relate to mat-

ters that pre-existed the final decree of divorce and have not changed since the decree was entered in 1987.

Mother has remarried since the 1987 divorce. However, the trial court made no findings concerning mother's remarriage or the income of her new spouse, so this does not appear to be a basis for the decree. Moreover, remarriage, by itself, is not a sufficient change of circumstances to allow modification of child support. *See DeTevis v. Aragon*, 104 N.M. 793, 727 P.2d 558 (Ct.App.1986). Under *DeTevis*, remarriage was a sufficient change of circumstances if the remarried parent had additional income available, in the form of the remarried parent's community share of the subsequent spouse's income. However, under Section 11.1, the district court may not consider the subsequent spouse's income in determining a parent's income for purposes of calculating child support. *See* 40–4–11.1(C)(1).

Similarly, as a matter of law, father's circumstances have not changed since the prior decree. The trial court found as fact that father made mortgage payments, which the original decree ordered him to do; paid medical costs, which the original decree ordered him to do; incurred debts while the children were in his custody, which was contemplated by the original decree; paid one-half of the expenses incurred for counseling for the children, which the original decree ordered him to do; paid the costs of providing medical insurance coverage for the children, which the original decree ordered him to do; and paid the costs of activities such as Boy Scouts and school activities, which were allocated to the party having custody under the original decree.

There are two respects in which the circumstances have changed since the original decree. However, on the facts of this case, we do not consider the change to be either substantial or materially affecting the welfare of the children.

First, mother has moved twice since the original decree, and this has affected the costs of raising the children to some degree. After she remarried, mother moved to Hawaii for fourteen months, and now lives in Omaha, Nebraska. The trial court found that mother's move to Hawaii increased the cost of the transportation for visits and the expense of telephone contact. The 1987 decree did not provide for any particular allocation of telephone expense, except to the extent that it provided that each party was responsible for any debts incurred by the party after July 10, 1987. However, the order entered in these proceedings provided that mother would pay all the costs of telephone contact with the children. Thus, any increased telephone expense would not be a substantial change of circumstances. Similarly, the original decree ordered each party to pay half of the costs of transportation for visitation. The order entered in these proceedings continues the sharing of costs, but substantially reduces the frequency of visitation from approximately ten trips during the year to two trips. Thus, it is not clear that transportation costs have increased, and any increase would not appear to be a substantial change in circumstances.

Second, the court cited the costs of litigation since the 1987 decree. The only litigation since that decree is the proceeding that resulted in the order from which mother appeals. As noted above, while mother initiated the proceedings, both parties raised issues to be resolved by the trial court. Moreover, the original decree made provision for visitation only through the summer of 1988. Thus, the original decree contemplated a further order would be necessary. Under these circumstances, we do not think the additional litigation is a substantial change of circumstances.

## II. The Enactment of Section 11.1 Does Not Change the Law Requiring a Showing of Changed Circumstances.

The calendar notice that assigned this case to the general calendar directed the parties to brief the question of whether Section 11.1 requires the party seeking modification of a support obligation to make the traditional showing of changed circumstances. We directed the parties to brief this issue because it was apparent to us that Section 11.1 represents a signifi-

cant change in some aspects of the law relating to a parent's support obligations. Thus, we believed it was important to consider the extent of the change.

Prior to the enactment of Section 11.1, a number of judicial districts had developed guidelines that indicated the amount of a support obligation based on a parent's income. However, the guidelines were not binding on the courts. *See Chavez v. Chavez*, 98 N.M. 678, 652 P.2d 228 (1982). Instead, the guidelines were one of many factors that trial courts considered in determining the amount a parent should pay to support his or her children. *Id.; Spingola v. Spingola.* The determination of the actual amount was within the discretion of the trial court, and was subject to review only for abuse of discretion. *Spingola v. Spingola.* By contrast, Section 11.1 requires the court to use the method set out in the statute to calculate a parent's support obligation and declares that there is a rebuttable presumption that the amounts derived from these calculations are the amount of the support obligation. § 40–4–11.1(A). Any deviation from the amount derived by these calculations must be supported by a written finding that application of the statutory method and amounts would be unjust or inappropriate, NMSA 1978, Section 40–4–11.2 (Repl.Pamp. 1989), and must contain a statement of reasons for the deviation. § 40–4–11.1(A). Thus, it is apparent that Section 11.1 is a substantial change in the substance of the law, and a significant restriction of the trial court's formerly broad discretion in determining the amount of a parent's support obligation.

Mother argues that the enactment of Section 11.1 does not change the prior law that required a showing of changed circumstances before a trial court could modify a parent's support obligation. Mother points out that the legislature did not amend or change NMSA 1978, Section 40–4–7(C) (Repl.Pamp.1989), which reads in pertinent part as follows: "The court may modify and change any order in respect to the * * * maintenance or education of the children, whenever circumstances render such change proper." This statute has been in-

terpreted to require that the party seeking to modify a support award satisfy the traditional showing of changed circumstances, discussed above, before the trial court will modify the support obligation of a parent. *See Davis v. Davis*, 83 N.M. 787, 498 P.2d 674 (1972). Mother points out that statutes are to be construed as a harmonious whole, *see State ex rel. Klineline v. Blackhurst*, 106 N.M. 732, 749 P.2d 1111 (1988), and interpreted so that no portion of the statutory scheme is rendered surplusage or superfluous: *Anaconda Co. v. Property Tax Dep't*, 94 N.M. 202, 608 P.2d 514 (Ct.App. 1979). Thus, mother argues that this court must give effect to both Section 7 and Section 11.1 by holding that the party seeking modification of the support obligation must make the traditional showing of changed circumstances before the provisions of Section 11.1 are brought into play. Mother argues that if the legislature had intended to eliminate this requirement, it would have explicitly so indicated. Finally, mother notes that the legislature has indicated an intent to review the provisions of Section 11.1 at the end of four years. *See* NMSA 1978, § 40–4–11.3 (Repl.Pamp.1989). Thus, mother argues, if a showing of changed circumstances is not required, the support obligation will, in effect, become modifiable every four years or whenever the legislature changes the provisions of Section 11.1. Mother argues this would be burdensome to the district courts.

Father argues that the legislature intended to permit recalculation of child support obligations under Section 11.1 based solely on the specific provisions and formulas of Section 11.1, without any additional showing of changed circumstances. In other words, father argues that if the financial circumstances of the parents are such that the application of the provisions of Section 11.1 would change the amount of the support obligation, the change should be permitted.

Father bases his argument in part on both the broad language of Section 11.1, which applies to any action for modification of the support obligation, and in part on principles of statutory construction. Like

mother, father recognizes that statutes are to be construed as a harmonious whole. *See Anaconda Co. v. Property Tax Dep't.* Father argues that his interpretation of Section 11.1 is compelled by reading Section 11.1 in context with the other sections in this article of the laws. Father points to NMSA 1978, Section 40–4–9.1 (Repl.Pamp. 1989), our joint custody statute, in which the legislature specifically required a showing of changed circumstances before joint custody could be awarded as a substitute for an existing custody arrangement. Similarly, father points to the provisions contemplating modification of the statutory schedule in four years, and argues that this indicates an intent on the part of the legislature that support obligations be modified periodically to reflect changes in the statute. In addition, father points to the express purposes of the legislature set out in Section 11.1, which include:

> The purposes of the child support guidelines are to:
>
> (1) establish as state policy an adequate standard of support for children, subject to the ability of parents to pay;
>
> (2) make awards more equitable by ensuring more consistent treatment of persons in similar circumstances; and
>
> (3) improve the efficiency of the court process by promoting settlements and giving courts and the parties guidance in establishing levels of awards.

Section 40–4–11.1(B). Father argues that these purposes will not be achieved as readily if a parent is required to show changed circumstances within the meaning of the traditional rule in order to obtain modification of a support obligation. Finally, father argues that Section 11.1 requires consideration of the potential income of an unemployed or underemployed parent. *See* § 40–4–11.1(C)(1). Thus, father argues, at the time of the divorce mother's income was nothing; however, when Section 11.1 took effect, mother's income for purposes of child support was, under the findings of the trial court, $10,200 a year. Thus, father contends that mother's income has changed in law if not in fact.

We have carefully considered the arguments of the parties on this issue. However, we are not persuaded that Section 11.1 evinces a legislative intent to supplant a long line of court decisions that require the party seeking modification to make the traditional showing of changed circumstances. To hold otherwise would make prior decrees that are not in accord with Section 11.1 susceptible to automatic modification, merely on a showing of lack of compliance with the statute, and would increase litigation surrounding support obligations. Instead, we think the legislature intended Section 11.1 to update and make uniform throughout the state the amount of the child support obligation based on the income of the parents, but did not intend to abolish the requirement that the party seeking modification make the traditional showing of a substantial change in circumstances. In addition, we believe this reading harmonizes Section 11.1 with Section 7 and gives effect to both. When interpreting a statute, we presume that the legislature was informed as to existing law, and that the legislature did not intend to enact a law inconsistent with any existing law. *See Quintana v. New Mexico Dep't of Corrections,* 100 N.M. 224, 668 P.2d 1101 (1983); *Gonzales v. Middle Rio Grande Conservancy Dist.,* 106 N.M. 426, 744 P.2d 554 (Ct.App.1987).

Mother asks for her attorney fees on appeal, relying on *Miller v. Miller,* 96 N.M. 497, 632 P.2d 732 (1981). In *Miller,* the trial court specifically found that the party to whom fees were awarded needed assistance in paying attorney fees, and the appellate court relied on that finding in awarding fees on appeal. In this case, the trial court made no such finding. In the absence of such a finding, we decline to award mother her attorney fees on appeal.

In summary, we hold that a party seeking to modify a child support obligation must show that there has been a substantial change of circumstances, materially affecting the welfare of the child, that has taken place since the entry of the prior support decree. Only after such a showing has been made may the district court modi-

fy the support obligation of a party to conform to the statutory schedule of Section 11.1. We further hold that, as a matter of law, there was no such showing made in this case. Thus, we reverse the district court and remand with instructions to vacate that portion of its order of September 20, 1989, that orders mother to pay child support to father.

IT IS SO ORDERED.

DONNELLY and APODACA, JJ., concur.