2000-NMCA-040

999 P.2d 1074

**Richard H. BUSTOS, Petitioner–Appellant/Cross–Appellee,**

v.

**Stella BUSTOS, Respondent–Appellee/Cross–Appellant.**

**No. 20,157.**

Court of Appeals of New Mexico.

March 27, 2000.

844

Lisa B. Riley McCormick, Caraway, Tabor & Madrid Carlsbad, for Appellant/Cross–Appellee.

Mary W. Rosner Las Cruces, for Appellee/Cross–Appellant.

## OPINION

SUTIN, J.

{1} Father, Richard Bustos, appeals from a judgment awarding Mother, Stella Bustos, child support arrearages. Mother cross-appeals because the district court did not award her attorney fees or interest on the arrearages. We affirm the court's arrearages award

and denial of attorney fees. We reverse the court's denial of interest.

## FACTUAL AND PROCEDURAL HISTORY

{2} Mother and Father were divorced in 1984. They have two daughters, Alisha, born October 28, 1976, and Ashley, born May 21, 1981. The 1984 property settlement and child custody agreement awarded Mother:

$150.00 per child as child support for the parties['] minor children. The total amount of $300.00 per month shall be paid not later than the 10th day of each month commencing August 1984; and thereafter until the minor children reach the age of majority or are sooner emancipated.

{3} A modification order was entered on July 20, 1993, following a motion by Mother to modify the 1984 decree by setting child support pursuant to the child support guidelines then in effect. *See* NMSA 1978, § 40–4–11.1 (1995). This order stated:

Petitioner [Father] shall pay the Respondent [Mother] child support for the minor children of the parties at the rate of $706.44 per month beginning January 1, 1993.

This 1993 modification order awarded Mother attorney fees and child support arrearages. The order further stated that "[e]very term and condition in the 1984 Judgment and Decree of Dissolution of Marriage not hereinabove modified shall remain in full force and effect."

{4} On January 21, 1994, Father's attorney sent a letter to Mother's attorney requesting a reduction in child support to $350.00 a month. Father's request was based on his attorney's calculation of child support, which in turn was based on Father's reduced number of work hours. Father received no response from Mother. Father was advised by his lawyer that he needed to go into court to amend the child support order. The lawyer required a $500 retainer, so Father decided not to pursue a modification in court because he could not afford the retainer. Father considered his support obligation to be $350.00 per month, based on his attorney's calculation under the child support guidelines. When Alisha became 18 on October

28, 1994, Father considered his obligation to be half that. Thus, although Father was required under the 1993 modification order to begin paying $706.44 per month beginning January 1, 1993, Father instead made significantly reduced monthly payments.

{5} On June 18, 1998, Mother filed a petition for an order requiring Father to show cause why he should not pay child support arrearages. During the entire period from the July 1993 modification order until her June 1998 petition for an order to show cause, a period of five years, Mother did not contact Father to object to Father's self-decreed modification of the court's 1993 modification order. Nor, during that time, did Father contact Mother, except for his January 21, 1994, letter. Mother testified that she did not receive the $500.00 for attorney fees or the $2,438.64 in arrearages awarded to her in the 1993 modification order. Father intimates that those amounts were included in the payments he made over the five years.

{6} The district court entered judgment on December 17, 1998, awarding Mother $33,-861.92 in back child support. The court denied Mother interest on that back support, and also denied her request for attorney fees.

**FATHER'S APPEAL**

{7} Father advances several points for reversal: (1) the district court erred in holding that the child support award in the modification order was an "undivided" support award, rather than a "divided" one; (2) the undivided award was fundamentally unfair because it required Father to pay child support on an emancipated child; (3) the court lacked jurisdiction to award arrearages that included support attributable to the emancipated child; (4) the court erred in awarding arrearages for the emancipated child because child support automatically terminates upon emancipation; and (5) the court erred in not finding Mother's claim to be barred by laches, equitable estoppel, or waiver by estoppel.

{8} The first four issues depend for their success upon whether the award in the 1993 modification order was one that remained in effect, notwithstanding the fact that one of the two children became an adult. This is a legal issue, which we review de novo, looking at whether the court applied the correct law. The fifth issue, together with Mother's request for attorney fees, places before us the unfortunate inequities that result when one parent disregards an order and the other parent does not enforce the order.

A. *The Court Did Not Err in Awarding Arrearages Based on an Undivided Award*

{9} The district court's arrearages award included amounts that Father unilaterally decided not to pay after his older child, Alisha, reached the age of 18. To overturn this award, Father argues that a parent generally has no obligation to pay post-minority child support. *See Christiansen v. Christiansen,* 100 N.M. 102, 104, 666 P.2d 781, 783 (1983). With this basic tenet in hand, Father wants to drive a wedge through the determination of the district court that the award was undivided. The district court found that none of the child support obligation was automatically discontinued once Alisha reached 18, but rather the entire child support obligation remained during the minority of the second child, Ashley, unless the order was modified. Father argues that the award in the 1993 modification order must be construed as a divided award. Father faces substantial hurdles.

{10} The modification order does not award a specific amount per child; rather, it awards one amount for "child support for the two minor children." The award reads as an undivided award. "[A]n undivided support award applicable to more than one child is presumed to continue in force for the full amount specified in the decree until the youngest child attains the age of majority." *McCurry v. McCurry,* 117 N.M. 564, 566, 874 P.2d 25, 27 (Ct.App.1994) (citing *Britton v. Britton,* 100 N.M. 424, 671 P.2d 1135 (1983)); *cf. Hopkins v. Hopkins,* 109 N.M. 233, 237, 784 P.2d 420, 424 (Ct.App.1989) (holding that court did not abuse its discretion in requiring husband to pay $500 a month child support arrearages for two children after husband unilaterally withheld $250.00 a month for the two-year period of time that one child lived with him).

{11} Father argues that *McCurry* and *Britton* were decided without consideration of the structure and purpose of the guidelines as set out in NMSA 1978, § 40–4–11.1(A) and (B) (as amended through 1995). Before the guidelines, according to Father, support awards were unguided with respect to divided and undivided awards. Interpretations of prior awards were thus inconsistent and problematic because of the difficulty in determining, in retrospect, how much of the total award was intended to be for each child and whether the court's intention was to order an equal amount for each child or to award different amounts based on special needs.

{12} Father asserts that the guidelines eliminated these problems, in that under the guidelines "[t]he number of children is an essential factor in calculating a guideline amount of child support." From this premise, Father concludes that "every guideline child support award [implies] a certain amount attributed to each child," and that "the exact breakdown of how much of the total support [is] attributed to each child is set out in black and white in the ... Statutes." Father points out that all one has to do is "refer to the chart contained in the New Mexico Statutes to see exactly how much of that total award was attributed to each child." Father thus construes the guideline award in the 1993 modification order to be "more similar to divided support awards" requiring automatic reduction when a child is emancipated. We find Father's interpretative analysis unpersuasive.

{13} The guidelines were enacted in 1988 and structurally remain the same despite revision of the amounts to be awarded. Though detailed and elaborate, the guidelines are silent on the distinction between divided and undivided awards. Specifically, they do not say whether a support award is automatically reduced once one of two or more children reaches the age of majority.

{14} While the guidelines clearly make a distinction in the amount of child support to be awarded for one child and two children, and clearly add amounts to the support obligation with the addition of the number of children, the guidelines neither state nor imply that a certain amount is specifically attributed as support for child one, with an additional amount specifically attributed as support for child two. Rather, the guidelines require a tally of the number of children, a determination of the Basic Support using the combined income of the parents based on that number and then a final determination of each parent's net obligation to determine the monthly support obligation. As we recently stated:

> The basic support for an additional child does not equal the amount of basic support for one child. The table recognizes that an additional child does not add as much expense to the household as did the first child. *See Spingola v. Spingola,* 91 N.M. 737, 744, 580 P.2d 958, 965 (1978) ("Experience indicates that the support level for one child must be considerably higher than that necessary for additional children.").

*Erickson v. Erickson,* 1999–NMCA–056, ¶ 12, 127 N.M. 140, 978 P.2d 347. "The guidelines are not intended to reflect what the parents have in fact been spending for the care, maintenance, and education of their children. Rather, they set a presumptive figure for what the parents *should* be spending [for all of their children as a family unit]." *Leeder v. Leeder,* 118 N.M. 603, 606, 884 P.2d 494, 497 (Ct.App.1994). In our view, to use Father's phraseology, this guideline award "is more similar to" an undivided than to a divided support award.

{15} The adoption of the guidelines did not nullify the requirement that a parent show a substantial change in circumstances before a district court can modify the parent's support obligation. *See Perkins v. Rowson,* 110 N.M. 671, 672, 798 P.2d 1057, 1058 (Ct.App.1990) (rejecting argument that the adoption of the guidelines "evinces a legislative intent to supplant a long line of court decisions that require the party seeking modification to make the traditional showing of changed circumstances"). It takes more than a unilateral and extrajudicial recalculation based on the provisions and formulas of the guidelines to modify a court-ordered child support award. *See id.* at 675, 798 P.2d at 1061. It remains our law that

modifications can only be made by court order.

{16} We prescribe a surer way of making the processes more predictable and stable: if there is to be any automatic reduction in an obligation of child support under the guidelines when a child reaches age 18, that automatic reduction must be clearly stated in a court order or decree. The district court must enter findings of fact that support the reasons why it is determining in advance the automatic reduction of support when a child reaches 18. If no automatic reduction is ordered in an order or decree and if a parent believes that his or her obligation should be reduced when a child reaches 18, that parent must seek that relief in court.

{17} We hold that because it did not contain language expressly or even impliedly allowing automatic reduction in the award when Alisha turned 18, the 1993 modification award could only have been reduced by Father's obtaining that relief in court. Father chose not to seek that relief, and the district court did not err in awarding the arrearages.

B. *The Court Did Not Err in Awarding Arrearages, Despite Mother's Failure to Enforce the Modification Order*

{18} The district court determined that "[p]ast child support obligations vested and may not be modified." The court rejected Father's contentions that Mother's claim for arrearages was barred by laches, equitable estoppel, and waiver by estoppel. In support of his defenses, Father relies only on his asserted good faith belief that he had the right to reduce his payments and Mother's silence following his January 21, 1994, letter. Our cases make it clear, however, that neither an obligor's good faith nor an obligee's silence nor a combination of both alone is sufficient to relieve an obligor of child support obligations. *See McCurry*, 117 N.M. at 567–68, 874 P.2d at 28–29; *Hopkins*, 109 N.M. at 237, 784 P.2d at 424. For an obligor who, after the passage of time, thinks a child support award is ambiguous or unjust, the proper remedy is to seek prospective modification in court. *See Britton*, 100 N.M. at 426, 671 P.2d at 1137. We hold that the district court did not err in refusing to find in Father's favor on his defenses.

## MOTHER'S CROSS–APPEAL

{19} Mother raises two points on appeal: (1) the district court erred in not awarding interest on the arrearages award, and (2) the court abused its discretion by failing to award attorney fees to Mother.

A. *The Court Erred in Failing to Award Interest*

{20} Mother contends that the district court was required by statute to award, and had no discretion to deny, interest on the support arrearages. *See* NMSA 1978, § 56–8–4(A) (1993) ("Interest shall be allowed on judgments and decrees for the payment of money from entry . . . ."). Because each unpaid installment was a final judgment, *see Britton*, 100 N.M. at 428, 671 P.2d at 1139, Mother continues, the interest was post-decree interest and mandatory, *see Sunwest Bank of Albuquerque v. Colucci*, 117 N.M. 373, 379, 872 P.2d 346, 352 (1994). Mother is correct.

{21} The interest Mother seeks is interest on each support payment due, each of which is a final judgment. *See Britton*, 100 N.M. at 428, 671 P.2d at 1139. Accordingly, her claim was to post-judgment, not pre-judgment interest as Father argues. Under Section 56–8–4(A) and *Sunwest*, post-judgment interest is mandatory, and the court had no discretion to deny it. In doing so, the court erred.

{22} Mother contends that interest should be awarded at a 15 percent rate pursuant to Section 56–8–4(A), or as a sanction, because she established a prima facie case of Father's willful contemptuous conduct. Mother cites *Niemyjski v. Niemyjski*, 98 N.M. 176, 646 P.2d 1240 (1982) (court did not abuse its discretion in imposing jail sentence in punishment of father for civil contempt in failing to pay child support) as authority to sanction Father. This issue, however, was not decided by the district court. Accordingly, we remand the matter for a determination of fact and ruling of law as to what interest rate applies.

**B.** *The Court Did Not Abuse Its Discretion in Failing to Award Attorney Fees*

{23} Mother concedes that "the standard of review on appeal for failure to award attorney's fees is extremely high," and acknowledges that it is within the district court's discretion to award reasonable attorney fees. Still, Mother sets out in several pages a litany of reasons why Father's conduct was contemptuous in order to prove her point that this is the case, if any exists, in which to award attorney fees.

{24} The district court does, of course, have discretion to award attorney fees. *See* NMSA 1978, § 40–4–7(A) (1997); *Herrera v. Herrera*, 1999–NMCA–034, ¶ 19, 126 N.M. 705, 974 P.2d 675. We review a ruling denying attorney fees for abuse of discretion. *See Henderson v. Lekvold*, 99 N.M. 269, 271–72, 657 P.2d 125, 127–28 (1983). An abuse of discretion occurs if the decision is against the logic and effect of the facts and circumstances of the case. *See Cordova v. Taos Ski Valley, Inc.*, 121 N.M. 258, 263, 910 P.2d 334, 339 (Ct.App.1995); *Roselli v. Rio Communities Serv. Station, Inc.*, 109 N.M. 509, 512, 787 P.2d 428, 431 (1990) ("A trial court abuses its discretion when its decision is contrary to logic and reason.").

{25} Mother contends that she clearly established a prima facie case of contempt. Further, Mother adds the circumstances that she has been a single mother and that Father completely rejected and had no communication with her and the children. In Mother's view, the court has rewarded Father for his contempt and punished Mother for acting lawfully and enforcing the court order. In particular, Mother argues that she has been financially punished by the court because it refused to award attorney fees after also refusing to reimburse her $5000 in uninsured medical expenses incurred on behalf of the children, refused to award 15 percent interest for Father's bad faith conduct (or even 8.75 percent interest), refused to enforce the 1993 award of attorney fees, and, finally, refused to recognize the complete unconcern of Father and the full absorption of Mother in the serious psychological and other problems of one of the children.

{26} In determining whether to award attorney fees, the district court has the latitude to consider many factors. *See, e.g., Henderson*, 99 N.M. at 271–72, 657 P.2d at 127–28; and *Bustos v. Gilroy*, 106 N.M. 808, 810–11, 751 P.2d 188, 190–91 (Ct.App. 1988). A party's "actions [that] require enforcement through litigation" is a factor to be considered when making " 'an order, relative to the expenses of the proceeding, as will ensure either party an efficient preparation and presentation of his case.' " *Herrera*, ¶¶ 19–20 (quoting Section 40–4–7(A)).

{27} Economic disparity is another important factor. *See Monsanto v. Monsanto*, 119 N.M. 678, 681, 894 P.2d 1034, 1037 (Ct.App.1995). In fact, "*a showing of economic disparity, the need of one party, and the ability of the other to pay,*" has been characterized as "[t]he primary test in New Mexico for awarding attorney fees in a divorce case...." *Id.* at 684, 894 P.2d at 1040, (Donnelly, J., specially concurring). In this regard, Mother argues that the $33,861.92 that Father failed to pay from July 1993 to August 1998 should have been included in the computation of Father's gross annual income as of the date of trial, thereby resulting in an economic disparity favoring Father and requiring the court to award Mother attorney fees. Mother does not show us where in the record she raised this point with the district court. She did not submit any requested finding of fact alerting the district court to the point. A party who fails to tender a request for a specific finding of fact waives that issue. *See, e.g., Fenner v. Fenner*, 106 N.M. 36, 41, 738 P.2d 908, 913 (Ct.App.1987).

{28} In the present case, the district court in comments made both at trial and through its findings showed its deep concern about the parties' two-way failure of communication. The court also found no economic disparity to exist between the parties. Specifically, the court found:

18. Respondent [Mother] has unreasonably delayed her objection to Petitioner's [Father's] reduction in child sup-

port waiting for over four and one-half years to assert a claim.

19. Both parties to this litigation exhibited to the Court obstructive behavior. It was apparent from the testimony the parties have not talked for years and had no communication whatsoever.

20. The totality of the circumstances testified to and exhibited by the parties['] demeanor in Court revealed this matter, through civil communication, could have been resolved years ago.

21. Had the parties been civil to each other and had any kind of communication, the father, just possibly, might have some relationship with his children.

22. At the time of hearing there is no economic disparity between the parties and, in fact, the mother earns more money than the father.

23. The wife, it was obvious, had an efficient preparation and presentation of her case.

24. Petitioner has maintained health insurance for the children since the time the parties divorced. Respondent has known about this insurance and utilized the insurance. Respondent never told Petitioner that she was having any problems with the insurance, which she was providing for the children nor did Respondent tell Petitioner that she had obtained insurance coverage herself for the two children.

. . . .

28. Because of the parties['] exhibited obstructive behavior towards each other and in essence their children, the Court is not going to award the wife attorney fees or interest on unpaid amounts and is also requiring the husband make a lump sum cash payment to wife on or before December 18, 1998.

29. All people, including the parties, have a duty to inquire after a divorce if the children born of a dissolved marriage are okay. Each party to a dissolved marriage has a respective duty to communicate with the divorced spouse to see if the children are alright from a medical standpoint, if they need more support or have encountered special educational needs.

{29} The district court obviously carefully considered Mother's conduct, as well as the economic situation of the parties. Mother does not attack any of these findings as not supported by substantial evidence. We are not prepared to hold that the court abused its discretion in denying Mother attorney fees.

**CONCLUSION**

{30} The district court did not err in awarding Mother child support arrearages, or in refusing to award attorney fees. The court erred in failing to award interest. We affirm the arrearages award and the denial of attorney fees. We reverse the denial of interest and remand for a determination of interest due Mother on the arrearages award.

{31} **IT IS SO ORDERED.**

PICKARD, C.J, and ARMIJO, J., concur.