# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**EVA RADWANSKI FOX**
**n/k/a EVA FOX,**

Petitioner-Appellant,

**v.**                                                                                    **No. 28,011**

**RICHARD Z. RADWANSKI,**

Respondent-Appellee.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Deborah Davis Walker, District Judge**

Carpenter Law, PC
Joshua Carpenter
Albuquerque, NM

for Appellant

L. Helen Bennett, P.C.
L. Helen Bennett
Albuquerque, NM

for Appellee

## MEMORANDUM OPINION

**SUTIN, Judge.**

Appellant Eva Fox (Wife) appeals the district court's judgment in favor of Richard Radwanski (Husband) on his motion for modification of the marital settlement agreement the parties entered into in 2000. Wife contends that the district

court erred by (1) reducing spousal support, (2) clarifying the retirement benefits provision in the marital settlement agreement, (3) requiring the parties to bear their own attorney fees, and (4) calculating the judgment. We hold that the court did not err, and we affirm.

**BACKGROUND**

Husband and Wife were married in Poland in 1973 and later became United States citizens. After twenty-seven years of marriage, Wife filed for divorce on November 20, 2000. The marital settlement agreement (MSA) was filed the same day. The final divorce decree, which incorporated the MSA, was filed on November 27, 2000.

The provisions of the MSA at issue in this appeal concern spousal support and retirement benefits. With respect to spousal support, Husband was required to pay Wife $3,000 every month in alimony as long as his salary did not decrease significantly. If Husband's salary decreased significantly, the MSA stated that alimony would be adjusted to 30% of Husband's monthly employment income. In addition, the MSA stipulated that Husband's obligation to pay alimony to Wife would continue regardless of any future changes in Wife's marital status.

In the provision governing the division of community property, the parties agreed that Wife would receive as her separate property a share of Husband's retirement benefits as follows:

> Upon [Husband's] retirement, [Wife] shall be entitled to 50% of all monetary benefits accruing from [Husband's] 401K plan as well as 30% of any and all future income resulting from [Husband's] retirement. For purposes of this agreement, [Husband] shall be deemed to have retired when [Husband] begins to receive benefits from his 401K plan, regardless of whether [he] engages in post-retirement employment.

The parties also agreed that Husband would receive

> [a]ll of [Husband's] retirement benefits to which [Wife] is not entitled as provided in this Agreement. In any event, [Husband] shall be entitled to no more than 50% of the monetary benefits from his 401K plan and no more than 70% of all other future benefits resulting from his retirement.

In addition, under the general terms and conditions, the MSA provided that "[a]ny property acquired by either party after the effective date shall be the sole and separate property of the party acquiring same."

Wife was granted exclusive possession of a condominium in Los Angeles, California, and Husband was required to pay the mortgage on that condominium until the mortgage was paid in full. The parties agreed to split the proceeds equally if the condominium was sold.

3

Husband was working in Korea at the time the parties negotiated the MSA. Wife was represented by counsel, but Husband was not. One month after entry of the final decree, Wife remarried. Husband remarried in 2002 and now has a young child. Husband currently works in Dubai, United Arab Emirates.

In February 2006, Husband filed a motion asking the district court to modify the spousal support provision and clarify the retirement benefits provision of the MSA. Husband asserted a substantial change in circumstances affected his ability to pay spousal support based on the higher cost of living in Dubai and his increased expenses due to his new wife and child. Husband also claimed that Wife's resources had increased due to her remarriage. In addition, Husband requested the court to clarify that Wife was not entitled to any property including 401K contributions and retirement benefits acquired after the date of the divorce. Husband asserted that Wife was only entitled to receive 50% of the money accruing from Husband's 401K as of the date of the divorce and was not entitled to 30% of any future income resulting from Husband's retirement. Husband argued that the provision concerning the division of retirement benefits as community property conflicted with the provision providing that Husband was entitled to all assets he acquired after the divorce.

Husband also sought to enforce the parties' agreement regarding ownership and disposition of the condominium.

Following several attempts at settlement, Wife filed a motion for an upward modification of spousal support on November 27, 2006. Wife claimed that there had been a significant change in circumstances warranting an upward modification because Husband's income had increased significantly, Wife was unable to meet her monthly expenses and health care needs, and Wife was unable to obtain employment due to her age and health.

After numerous hearings, the parties proceeded to trial. According to Husband's testimony, he was working in Korea at the time the parties entered the MSA and was not represented by counsel. He was under pressure from Wife, who was represented by a New Mexico attorney, to finalize the divorce so that she could remarry. Husband had worked in Dubai as an engineer since 2004. Husband, who was fifty-eight years old at the time of the trial, was an at-will employee approaching retirement age. His job stability was not good and employees nearing his age were often terminated due to restrictions in Dubai against working past the age of sixty. Despite an increase in salary from $144,000 to $155,331 since the divorce, the high

cost of living in Dubai made it difficult for Husband to pay the spousal support as set out in the MSA to Wife and support his new family.

Wife, who was fifty-six years old at the time of trial, testified that she was unable to work due to her age, health, language problems, and lack of marketable skills. Wife's new husband did not contribute to her support; her sole source of income was from Husband's spousal support. Although Wife was free of debt at the time of the divorce, she had since incurred substantial credit card debt. Wife claimed that she needed more spousal support to meet her necessary expenses, including health care. Wife had received the equivalent of a master's degree in math in Poland and had worked as a math teacher, a computer technician, and skin care specialist during the marriage. Since the divorce, Wife had not attempted to work and claimed health problems prevented her from doing so. Husband challenged Wife's testimony about her reasonable and necessary expenses, her current husband's ability to contribute to her support, and her claim that health problems prevented her from working but not from traveling.

After trial, the district court orally ruled that the retirement benefits provision constituted a division of property, but interpreted the provision as being limited to the retirement benefits in existence at the time of the divorce. The court reduced

Husband's spousal support obligation to $1,750 effective March 1, 2006, and calculated the potential amounts owed after overpayments and arrearage. The court warned the parties that pursuing attorney fees or sanctions would be "throwing good money after bad" as Husband was the prevailing party but also had more resources. The court noted it would be premature to litigate issues with respect to the condominium.

The court invited proposed findings of fact and conclusions of law, which were filed by both parties. Both parties subsequently filed requests for attorney fees and costs. Wife requested $68,443.54. Husband requested $34,598.92 and asked that Wife repay $5,450 in overpayments of spousal support. After a hearing, the district court ruled that the parties should pay their own attorney fees and directed the parties to file supplemental findings and conclusions if necessary. Neither party did. On August 23, 2007, the district court entered its findings and conclusions and an order and judgment. The court reduced Husband's spousal support obligation to $1,750 per month, ruled that Wife was not entitled to any portion of Husband's retirement contributions made after the date of the divorce, awarded a judgment against Wife of $5,709 for Husband's overpayment of spousal support, and declined to award either party attorney fees or costs. This appeal followed.

# DISCUSSION

## I.      The District Court Did Not Err in Modifying Spousal Support

Wife argues that the district court abused its discretion in reducing Husband's spousal support obligation by basing its determination that substantial changes had occurred on erroneous considerations. Wife claims that the court improperly considered changes that had been contemplated by the parties in the MSA and therefore were not material. Wife also claims that the district court erred by basing its consideration of Wife's need and Husband's ability to pay on facts that were not supported by substantial evidence.

The district court has wide discretion to award or modify spousal support, and its decision will only be set aside if it constitutes an abuse of discretion. *See Martinez v. Martinez*, 1997-NMCA-125, ¶ 10, 124 N.M. 313, 950 P.2d 286; *Ellsworth v. Ellsworth*, 97 N.M. 133, 134, 637 P.2d 564, 565 (1981). "An abuse of discretion occurs when a ruling is clearly contrary to the logical conclusions demanded by the facts and circumstances of the case." *Sims v. Sims*, 1996-NMSC-078, ¶ 65, 122 N.M. 618, 930 P.2d 153. Further, to constitute an abuse of discretion, "it must be shown that the court's ruling exceeds the bounds of all reason . . . or that the judicial action taken is arbitrary, fanciful, or unreasonable." *Meiboom v. Watson*, 2000-NMSC-004,

¶ 29, 128 N.M. 536, 994 P.2d 1154 (alteration in original) (internal quotation marks and citation omitted). "When there exist reasons both supporting and detracting from a trial court decision, there is no abuse of discretion." *Talley v. Talley*, 115 N.M. 89, 92, 847 P.2d 323, 326 (Ct. App. 1993). "Where the court's discretion is fact-based, we must look at the facts relied on by the trial court as a basis for the exercise of its discretion, to determine if these facts are supported by substantial evidence." *Apodaca v. AAA Gas Co.*, 2003-NMCA-085, ¶ 60, 134 N.M. 77, 73 P.3d 215 (internal quotation marks and citation omitted).

**A.    The District Court Properly Considered Whether Substantial Changes in Circumstances Warranted Modification of Spousal Support**

We first turn to Wife's argument that the district court improperly considered erroneous factors. Under NMSA 1978, Section 40-4-7(B)(2)(a) (1997), the district court has the discretion to modify orders of spousal support "whenever the circumstances render such change proper[.]" *See also* § 40-4-7(F) (providing that the district court "shall retain jurisdiction over proceedings involving periodic spousal support payments when the parties have been married for twenty years or more prior to the dissolution of the marriage"). In determining whether to modify or terminate spousal support, the district court must consider factors such as age and health, means of support, current and future earnings and earning capacity, good-faith efforts to

maintain employment or become self-supporting, reasonable needs, duration of the marriage, amount of property awarded, assets and liabilities, and settlement agreements. *See* § 40-4-7(E). The district court's task is "to balance the needs, resources, and capabilities of the parties." *Cherpelis v. Cherpelis*, 1996-NMCA-037, ¶ 14, 121 N.M. 500, 914 P.2d 637.

In challenging the district court's finding that there were substantial changes in circumstances, Wife argues that the court failed to identify those changes. Wife claims that a careful review of the record reveals that the only changes that had occurred concerned Wife's remarriage and Husband's ability to pay. Wife contends that the court abused its discretion in considering these factors because the express terms of the MSA precluded it from doing so. According to the MSA, Wife argues, spousal support would continue at $3,000 per month unless there was a significant decrease in Husband's salary and regardless of remarriage.

We first take issue with Wife's broad assertion that the district court failed to identify the substantial changes that justified a reduction in spousal support. Our review of the record indicates that the court carefully considered many factors relevant to Husband's request for modification. After an evidentiary hearing, the district court acknowledged that the MSA represented Husband's desire to provide for Wife after

10

the divorce, but noted that there "just isn't enough money to go around to support all these people." The court specifically noted the following substantial changes and other relevant facts. Wife had maintained her standard of living and had acquired a tremendous amount of credit card debt. Wife was providing a house and support for her new husband through her spousal support. The court also noted that it was not fair or equitable to require Husband to support Wife's current husband or Wife's mother. Husband's salary had "increased slightly," but his expenses had increased as well due in part to the cost of living in Dubai compared to Korea. Wife had limited employment opportunities, but was not totally unemployable. Both parties had limited savings and resources for retirement. Contrary to Wife's assertion, the record indicates that the district court carefully balanced the factors it was required to consider under Section 40-4-7(E).

Despite the express terms of the MSA, the district court was not precluded from considering factors such as Wife's remarriage and Husband's ability to pay. Our cases make clear that the statutory factors in Section 40-4-7(E) become part of the final decree. *See, e.g.*, *Scanlon v. Scanlon*, 60 N.M. 43, 49, 287 P.2d 238, 242 (1955) (stating that provisions of NMSA 1953, Section 22-7-6 (Vol. 5, 1953) relating to circumstances affecting modification of awards of alimony at time of dissolution of

marriage become part of the final decree). In *Martinez*, this Court determined that the district court improperly focused on the provisions of a final decree without considering the factors it was required to consider under the statute. 1997-NMCA-125, ¶¶ 14, 19 (holding that the failure to consider relevant factors in determining or modifying an award of spousal support is an abuse of discretion). Thus, the district court in the present case was required to consider the factors in Section 40-4-7(E) in determining whether to modify or terminate spousal support.

We reject Wife's contention that her remarriage could not be considered a substantial change because it was contemplated by the parties at the time of the MSA. The record indicates that the district court considered the parties' agreement that there would be no termination of spousal support based on Wife's remarriage, but also took into account evidence about her remarriage in light of the passage of time and changing circumstances. *See McClure v. McClure*, 90 N.M. 23, 24, 559 P.2d 400, 401 (1976) (recognizing that the district court may consider the circumstance of time in addition to other circumstances in determining whether a change in alimony is warranted). The court considered factors such as the length of the marriage, the capability of Wife's current husband to contribute to her support, his legal duty to support her, and his share of household expenses. We see no abuse of discretion in

the court considering remarriage as one of the factors affecting Wife's need. *See Russell v. Russell*, 101 N.M. 648, 650, 687 P.2d 83, 85 (1984) (recognizing that the district court must consider all the circumstances to avoid imposing a hardship on the supporting spouse and to prevent the other spouse from abdicating responsibility for his or her own support and maintenance). Moreover, the district court did not terminate spousal support based on Wife's remarriage. *See Kuert v. Kuert*, 60 N.M. 432, 439-40, 292 P.2d 115, 119-120 (1956) (holding that remarriage creates a prima facie case for termination of alimony unless the recipient demonstrates extraordinary circumstances). Instead, while recognizing Wife's need to take some responsibility for her own support and her new husband's duty to provide some support, the district court appeared to consider the parties' agreement about remarriage and determined that exceptional circumstances justified continuing spousal support indefinitely, but at a reduced amount.

We also reject Wife's assertion that the district court erred in considering changes in Husband's employment situation. Wife argues that Husband agreed to pay $3,000 per month in spousal support as long as his salary did not decrease significantly. Wife contends that Husband's salary did not decrease, but instead increased from $144,000 to $155,331. Despite the increase, we do not agree that the

13

district court abused its discretion in considering factors such as Husband's job stability and the high cost of living at his current location. In light of Husband's age and approaching retirement, and his increased expenses due to living in Dubai and supporting a new family, such evidence was relevant to the court's task of considering Husband's ability to pay spousal support. Thus, the court properly considered whether Husband's current working and living situations constituted substantial changes.

After carefully considering the factors in Section 40-4-7, the district court determined that it was no longer reasonable for Husband to provide $3,000 a month in spousal support. The court continued spousal support indefinitely, but modified it to reflect current economic realities and equities. We are persuaded that the court considered the MSA, the passage of time, and changed circumstances, and we believe the court struck an appropriate balance. The court's determination was based on proper factors and is supported by substantial evidence.

**B.      The District Court's Finding That Wife Had Available Assets Was Supported by Substantial Evidence**

Wife argues that the district court erred in finding that she had retirement benefits in considering Wife's need for spousal support and for the purpose of ruling

on modification. Wife contends that this finding is not supported by substantial evidence.

The district court found that Wife's available assets included "her retirement benefits, her interest in [Husband's] 401k, and her interest in the parties' condominium." Wife contends that there was no evidence that she had independent retirement benefits apart from her interest in Husband's 401K and that in fact she does not have any retirement benefits of her own.

We first note that the MSA provided that Wife would receive all of her retirement benefits as her separate property. Because the MSA referred to Wife's retirement benefits, we are not persuaded that the district court erred by including Wife's retirement benefits in the list of available resources. Moreover, any error the district court made by referring to Wife's retirement benefits did not materially affect the district court's ruling. Regardless of whether Wife had retirement benefits, the district court also considered Wife's interest in Husband's 401K and her interest in the parties' condominium as resources available to Wife. Thus, the finding was supported by substantial evidence. *See Lebeck v. Lebeck*, 118 N.M. 367, 371, 881 P.2d 727, 731 (Ct. App. 1994) ("Erroneous findings of fact unnecessary to support the judgment of the court are not grounds for reversal.").

15

**C.** **The District Court Did Not Abuse Its Discretion in Finding That Husband's Disposable Income Was Less Than $500**

Wife argues that the district court's finding that Husband's disposable monthly income was less than $500 was not supported by substantial evidence. Wife contends that the correct calculation for the amount of money available to Husband after payment of his monthly expenses should have been close to $900 per month.

The district court found that Husband had a net monthly income of $11,000 and reasonable and necessary expenses of about $10,500, which left a disposable monthly income of less than $500. Wife contends that Husband's testimony and his 2006 W-2 form indicated that Husband's monthly income was $11,449.84 while his monthly expenses were $10,573.59, which left a net monthly disposable income of $876.25.

After reviewing the testimony referred to in Wife's brief, we do not agree with Wife's assertion that the evidence demonstrated that Husband's net monthly income was $11,449.84 and his monthly expenses were $10,573.59. Rather, after Husband testified at length about his income, deductions, and expenses, the district court clarified that, according to Husband, his gross monthly income was $12,944, his monthly deductions were $1,905, and his net income was $11,039. After subtracting expenses of $10,716 from his net income, Husband had about $323 left. Wife did not disagree with the court's calculations based on Husband's testimony. Although Wife

16

now seeks to challenge these figures on appeal, she does not explain how she did so before the district court. Wife did not request a finding of fact or conclusion of law on Husband's expenses or his net income. In contrast, Husband requested findings about his income, deductions, expenses, and disposable income that were consistent with his testimony. If there was any error in the district court entering findings that Husband's net monthly income was $11,000 and his reasonable and necessary expenses were $10,500, Wife has failed to demonstrate that error. *See Bustos v. Bustos*, 2000-NMCA-040, ¶ 27, 128 N.M. 842, 999 P.2d 1074 ("A party who fails to tender a request for a specific finding of fact waives that issue.").

Moreover, we are not persuaded an error of $376 would constitute an abuse of discretion. In making its equitable determination, the district court found that Husband was paying Wife $3,000 per month in spousal support plus $1,053 per month in mortgage payment and taxes for the condominium in which Wife lived, which left Husband with very little disposable income after providing for his current family. Not only does any error appear to be de minimus, but Husband's ability to pay is only one factor the district court must consider in determining whether to modify spousal support. Wife has not persuaded us that this alleged error resulted in an abuse of discretion.

17

**II.    The District Court Properly Clarified the Retirement Benefits Provision**

Wife argues that the district court did not have jurisdiction to make any ruling on the retirement benefits provision. Wife contends that the determination that Wife was not entitled to any portion of Husband's retirement contributions made after the divorce was not a clarification, but a modification of the original judgment. Wife contends that a voluntary settlement of community property cannot be set aside by the court granting the divorce absent fraud, duress, mistake, breach of fiduciary duty, or other similar equitable grounds for invalidating an agreement. Wife contends that none of these grounds were present, and the court overreached its jurisdiction under Section 40-4-7. We disagree. The parties voluntarily agreed to a division of their community property, including Husband's retirement benefits. Once the agreement exists, "the district court can interpret, if it is ambiguous, and also enforce." *Weddington v. Weddington*, 2004-NMCA-034, ¶ 17, 135 N.M. 198, 86 P.3d 623.

Wife argues that even if the district court had jurisdiction to address the issue of retirement benefits, the court abused its discretion because the finding that the provision was ambiguous was not supported by substantial evidence. Wife argues that the plain language of the MSA could not have been more clear.

We first clarify the appropriate standard of review. Whether an agreement contains an ambiguity is a question of law that we review de novo. *Id.* ¶ 19. A contract is ambiguous and open to interpretation when its language is "reasonably and fairly susceptible to different construction." *Id.* "Once we agree with the district court that an ambiguity exists, if the court's interpretation is consistent with the language of the agreement read as a whole and is supported by the record, we review the court's resolution of the ambiguity for abuse of discretion." *Id.*

The district court found that the language referring to the division of Husband's retirement benefits was ambiguous because it conflicted with another provision in the MSA. In the section dividing community property, the MSA provided that upon Husband's retirement, Wife "shall be entitled to 50% of all monetary benefits accruing from [Husband's] 401K plan as well as 30% of any and all future income resulting from [Husband's] retirement." The MSA also provided that Husband was entitled to "[a]ll of [his] retirement benefits to which [Wife] is not entitled as provided in this Agreement. In any event, [Husband] shall be entitled to no more than 50% of the monetary benefits from his 401K plan and no more than 70% of all other future benefits resulting from his retirement." However, the section providing general terms

and conditions stated, "Any property acquired by either party after the effective date shall be the sole and separate property of the party acquiring same."

An ambiguity exists if a contract is "reasonably and fairly susceptible of different constructions." *Mark V, Inc. v. Mellekas*, 114 N.M. 778, 781, 845 P.2d 1232, 1235 (1993). "An ambiguity [also] exists . . . when the parties' expressions of mutual assent lack clarity." *Id.* Here, the language concerning Husband's retirement benefits is vague and conflicts with language in another part of the agreement. Thus, it is obvious from the language in the MSA that it is reasonably and fairly susceptible of different constructions and that the parties did not agree to express meaning of the terms. Under these circumstances, we do not think the district court erred in determining that the retirement benefits provision was ambiguous.

"Once the agreement is found to be ambiguous, the meaning to be assigned the unclear terms is a question of fact." *Id.* "However, in the event the parties do not offer evidence of the facts and circumstances surrounding execution of the agreement . . ., the court may resolve any ambiguity as a matter of law by interpreting the contract using accepted canons of contract construction." *Id.* at 782, 845 P.2d at 1236. Wife does not point us to anything in the record to indicate that she offered evidence of the parties' intent. Her requested findings concerning the retirement benefits

20

consist only of the argument that the court did not have jurisdiction. She requested a conclusion that the terms of the MSA regarding Husband's 401(k) and retirement accounts should remain unchanged. Wife's argument on appeal simply attacks the finding of ambiguity as running contrary to settled principles of contract interpretation which hold that a court will not interpret a contract such that a particular clause or provision annuls another. Wife also contends that the specific provision regarding retirement income serves as an exception that governs over the general language regarding property acquired after divorce.

In response, Husband argues that the district court recognized the inherent ambiguity in the MSA and resolved it consistent with New Mexico law and the equities in this case. Based on the record before us, we believe Husband's argument is more persuasive.

Upon dissolution of marriage, community property is to be divided equally. *See Ruggles v. Ruggles*, 116 N.M. 52, 58, 860 P.2d 182, 188 (1993). Retirement benefits earned during a marriage are community property, which are valued and divisible upon divorce. *Id.* Thus, in this case, any future, unearned retirement funds referred to in the provisions dividing community property were not community property. Accordingly, the provision for future retirement benefits did not constitute a division

21

of community property. It also conflicted with the later provision stating that property acquired after the divorce was separate property.

In the absence of argument and evidence that the parties intended to draft the division of retirement benefits in the community property provision contrary to community property principles, and because Wife's view of the provision on retirement benefits runs contrary to the later provision in the MSA, we affirm the district court's interpretation of the MSA. The evidence supports a reasonable determination that the reference was ambiguous and not in conformity with law. We see no abuse of discretion by the court resolving the ambiguity as it did. The resolution was consistent with New Mexico law.

**III.    The District Court Acted Within Its Discretion in Ruling on Attorney Fees**

Wife argues that the district court abused its discretion in denying her request for attorney fees. Wife contends that the court failed to give proper consideration to what she characterizes as an extreme economic disparity between the parties.

The district court has discretion to award attorney fees in domestic relations cases. *See* § 40-4-7(A); Rule 1-127 NMRA; *Bustos*, 2000-NMCA-040, ¶ 24. We review the determination of whether to make an award for abuse of discretion.

22

*Bustos*, 2000-NMCA-040, ¶ 24.  An abuse of discretion occurs when the district court's ruling is contrary to logic and reason.  *Id.*

The factors the district court must consider in determining whether to award attorney fees include the disparity of the parties' resources, prior settlement offers, the total amount of fees and costs expended by each party, and success on the merits. Rule 1-127. Here, the district court noted that Husband had more resources than Wife. However, the court also determined that Husband was the prevailing party.  The district court's findings further indicate that the court considered the nature of the proceedings and prior settlement offers and that Wife spent $63,793 in attorney fees and costs while Husband spent $34,599.  In discussing its ruling on attorney fees, the court noted that numerous fees were incurred by Wife's various trial attorneys due to drafting problems, a misrepresentation about a settlement agreement, and improper notice for expert witnesses.  The court noted that Husband should not have to be responsible for those fees.  The court considered settlement offers, but did not weigh the factor in favor of either party.

"[W]e review the district court's decision bearing in mind all of the factors it was required to consider." *Bursum v. Bursum*, 2004-NMCA-133, ¶ 27, 136 N.M. 584, 102 P.3d 651.  Disparity is only one factor and "cannot support reversal where the

23

other factors weigh in favor of the award of attorney fees." *Weddington*, 2004-NMCA-034, ¶ 28. Given the court's recognition that Husband was the prevailing party, the district court's decision not to award attorney fees to Wife was not an abuse of discretion. In addition, the court may have taken financial disparity into account by refusing to award Husband his requested attorney fees.

Wife further contends that the district court deprived her of the ability to pay her attorney fees by imposing a judgment and that the court's erroneous findings on Husband's disposable income and Wife's retirement benefits had an adverse impact on the court's determination about the parties' ability to pay. The district court's findings indicate that it was aware of the parties' resources and expenses. In determining the ability to pay attorney fees, the district court may have considered that Husband's disposable income was limited. Also, as discussed earlier, even though we do not agree that the district court erred in making the challenged findings, we think that any error was de minimus. Thus, we are not persuaded that the court abused its discretion based on an improper consideration of the parties' ability to pay.

Finally, we note that the district court found that both parties' counsel did an excellent job at trial. *See Bursum*, 2004-NMCA-133, ¶ 27 (recognizing that economic disparity did not prevent either side from making its case). The district court

expressly warned the parties that it was not inclined to award fees and costs. The court's oral and written findings make clear that it considered all the proper circumstances in determining whether to award attorney fees. Thus, we are not persuaded that the district court abused its discretion by requiring each party to bear their respective attorney fees and costs.

**IV.    The District Court Correctly Calculated the Judgment**

Wife argues that the district court's calculation of the judgment against her was erroneous. Wife contends that the court should have awarded Husband $4,459 instead of $5,709. We disagree.

Because the district court made the reduction of spousal support retroactive to March 1, 2006, the court concluded that Husband overpaid Wife $1,250 per month in spousal support from March 1, 2006, through April 2007. Contrary to Wife's assertion, the time period encompassed fourteen months for a total of $17,500. The court then offset $11,791 that Husband owed Wife for arrearage and interest from the overpayment. Thus, the district court correctly calculated the judgment awarded to Husband as $5,709.

**CONCLUSION**

The district court's order and judgment granting Husband's motion to modify spousal support was supported by substantial evidence and was in accordance with applicable law and equitable principles. The court did not impermissibly modify the MSA and did not abuse its discretion in determining not to award attorney fees or costs. Nor did the court err in calculating the amount to be awarded to Husband. We affirm.

**IT IS SO ORDERED.**

_____

**JONATHAN B. SUTIN, Judge**

**WE CONCUR:**

_____

**JAMES J. WECHSLER, Judge**

_____

**MICHAEL E. VIGIL, Judge**