1997-NMCA-033

938 P.2d 729

**Marcia J. ROSEN, f/k/a Marcia J. Lantis, Petitioner–Appellee,**

v.

**Roy W. LANTIS, Respondent–Appellant.**

No. 17785.

Court of Appeals of New Mexico.

April 2, 1997.

**232**

Mary Jo Snyder, Santa Fe, for Petitioner–Appellee.

William R. Brummett, Albuquerque, for Respondent–Appellant.

## OPINION

HARTZ, Chief Judge.

(1) Roy W. Lantis (Father) appeals from a district court order modifying custody and child support with respect to his daughter from his prior marriage to Marcia J. Rosen (Mother). Because this appeal was scheduled for expedited bench decision, *see In the Matter of the Court of Appeals Caseload,* No. 1–21 (filed Oct. 17, 1995) (describing expedited bench decision program) (attached hereto as an appendix), we announced our decision from the bench shortly after oral argument. This opinion more fully explains the rationale of our decision. *See* NMSA 1978, § 34–5–13 (Repl.Pamp.1996) (publication of opinions); Rule 12–405 NMRA 1997 (same).

(2) The marriage between Father and Mother was dissolved by the Santa Fe County district court in October 1993 pursuant to a marital settlement agreement and stipulated parenting plan. The parenting plan provided for joint legal custody of the daughter. The marital settlement agreement divided the marital estate and set forth the child support to be paid by Father to Mother. In contemplation of Mother's move to Nashville, Tennessee, the parties in July 1995 entered into a stipulated order modifying child support.

(3) The order under appeal arose out of a proceeding initiated by a motion filed by Father on April 1, 1996. The motion sought to amend the parenting plan and adjust child support. The outcome of the hearing was not favorable to Father. In its order of August 27, 1996 the district court awarded sole custody to Mother and increased the amount that Father must pay in child support, effective September 1, 1996.

(4) Father does not contest the award of sole custody to Mother. His appeal concerns several other rulings by the district court, most relating to child support. His contentions are as follows: (1) The district court should have ordered a reduction in the child support mandated by the 1995 stipulated order because of Mother's failure to make required expenditures on behalf of the daughter. Father contends that the downward adjustment should not only be effective from April 1, 1996, the date of his motion to modify child support, but should apply also to earlier payments. (2) The computation of future child support was improper under the statutory child support guidelines because (a) there was no evidence to support Mother's claim of child-care expenses and (b) the court improperly included recreational expenses in the computation. (3) The court improperly ordered him to pay, as child support, a debt that he had previously discharged in bankruptcy. (4) The court improperly held him in contempt and awarded Mother attorney's fees against him as a consequence. (5) The court improperly ordered the case transferred to Tennessee.

(5) We order that the finding of Father's contempt be stricken as surplusage and reverse those provisions of the district court's order that included recreational expenses in the calculation of child support and that directed the transfer of the case to Tennessee. We affirm on all other grounds.

## I. CHILD SUPPORT

### A. The 1995 Stipulated Order

■ (6) Paragraph 6 of the 1995 stipulated order stated:

The parties are in agreement that [Father] should pay an additional flat inclusive monthly sum of $160.00, which reflects payments for [the daughter's] therapy, uncovered normal and routine medical and dental expenses up to two hundred dollars ($200.00) per year, and all of [the daugh-

ter's] recreational and extracurricular activities.

Father contends that Mother breached the order by failing to enroll the daughter in Tennessee in the recreational and extracurricular activities in which she had participated in New Mexico—namely, gymnastics and cheerleading. As a result, he argues, he is entitled to a reduction in future child support payments and repayment of excessive payments he has already made. We reject these contentions. Mother testified that the daughter was continuing in cheerleading and gymnastics in Tennessee and that the average monthly cost for such activities exceeded the amount set forth in Paragraph 6 of the order. The district court was entitled to believe Mother's testimony and rule against Father's claim. *See Westbrook v. Lea Gen. Hosp.*, 85 N.M. 191, 195, 510 P.2d 515, 519 (Ct.App.1973) (credibility of witnesses is matter for trier of fact).

### B. Calculation of Child Support

(7) In an effort to promote fairness and reduce litigation with respect to child support, the New Mexico legislature has enacted child support guidelines that set forth the amount to be paid on the basis of objective criteria. These guidelines greatly reduce the discretion of the court. NMSA 1978, § 40–4–11.1(A) (Cum.Supp.1996) states:

In any action to establish or modify child support, the child support guidelines as set forth in this section shall be applied to determine the child support due and shall be a rebuttable presumption for the amount of such child support. Every decree or judgment of child support that deviates from the guideline amount shall contain a statement of the reasons for the deviation.

(8) The basic child support obligation is a function of the combined income of the parents and is paid by them in proportions based on their respective incomes and the amount of time each bears responsibility for the child. *See* § 40–4–11.1(E), (F), (G). In addition to the basic child support obligation, the parents share the costs of medical and dental insurance and reasonable child care. *See* § 40–4–11.1(H). The final statutory adjustment is provided by Section 40–4–11.1(I), which states:

The child support may also include the payment of the following expenses not covered by the basic child support obligation:

(1) any extraordinary medical, dental and counseling expenses incurred on behalf of the children of the parties. Such extraordinary expenses are uninsured expenses in excess of one hundred dollars ($100) per child per year;

(2) any extraordinary educational expenses for children of the parties; and

(3) transportation and communication expenses necessary for long distance visitation or time sharing.

(9) Father contends that the district court departed from the guidelines in two respects. First, he challenges the adjustment made for child care. Section 40–4–11.1(H) states in pertinent part: "[T]he net reasonable child-care costs incurred on behalf of [the parties'] children due to employment or job search of either parent shall be paid by each parent in proportion to his income, in addition to the basic obligation." Father contends that Mother did not prove that she was incurring child-care costs because of her employment. Mother, however, testified to the contrary and provided some documentation in support. The district court could properly credit her testimony and make the appropriate adjustment in awarding child support. *See Westbrook*, 85 N.M. at 195, 510 P.2d at 519.

(10) Father's second contention is based on the law, not the facts. He complains that on the worksheet for computing child support, the district court included $305 per month for "sports" as an additional expense to be shared by Father beyond the basic child support set forth in the statutory table. Father contends that there was no statutory authority for that addition. We agree. The statute lists only a few expenses that can justify exceeding basic child support. Recreational activities is not one of the listed categories.

(11) Mother argues that the requirement for including recreational expenses is implicit in the statutory provision governing joint

custody. NMSA 1978, § 40–4–9.1(J)(4)(e) (Repl.Pamp.1994), states that when joint custody is awarded, "[w]hatever recreational activities the child participated in during the marriage should continue with the child's agreement, regardless of which of the parents has physical custody." We agree that this provision represents a legislative recognition of the importance of recreational activities to children. But the importance of an activity is not in itself a reason for separate inclusion of the expense for that activity in the child support guidelines. After all, food and shelter are more important than recreation; yet the child support guidelines do not provide for adjustments for the cost of meals and housing. Such expenses—indeed all ordinary expenses—are presumably taken into consideration in establishing the guidelines for basic child support. The child support awarded under the guidelines should be adequate to feed and shelter the children, and to provide for recreational activities.

■ (12) Mother also contends that the recreational activities were so important to daughter's self-esteem and mental health that they should be characterized as "counseling expenses" under Section 40–4–11.1(I)(1). We need not decide on this appeal whether recreational activities could be characterized in appropriate circumstances as either "counseling" or "educational" expenses. Mother's claim in this regard must fail simply because the district court made no finding that the expenses were "counseling" expenses or that they were "extraordinary." This Court has no authority to supply those missing findings. *Cf. Landskroner v. McClure*, 107 N.M. 773, 775, 765 P.2d 189, 191 (1988) (failure of trial court to make a finding of fact is regarded as a finding against the party seeking to establish that fact).

■ (13) Mother's last contention is that the adjustment is proper because the parties had consistently agreed that their daughter should engage in such activities as gymnastics and cheerleading. Father did not, however, agree in this proceeding that he should pay a share of the expenses for those activities as additional child support. Because Father did not stipulate to this additional payment—indeed, he challenged it—neither his prior agreement to pay nor his continuing belief that the activities are important can overcome the statutory requirements for imposing a child support obligation upon him.

(14) Finally, we note that Section 40–4–11.1(A) does permit a district court to deviate from the guideline amount. But such a deviation must be supported by the court's written statement of the reasons for the deviation. *See* § 40–4–11.1(A); NMSA 1978, § 40–4–11.2 (Repl.Pamp.1994). The district court provided no such statement. Therefore, we must reverse the district court's award of child support and order a recomputation without inclusion of the additional expense of $305 per month for "sports."

## II. DISCHARGE IN BANKRUPTCY OF CHILD–SUPPORT DEBT

■ (15) The district court ordered Father to pay past-due medical and counseling bills for the daughter. Father does not dispute on appeal that the charges could properly be characterized as child support. He contends, however, that the district court had no authority to order him to pay the charges because he had discharged the debts in a personal bankruptcy proceeding. His view is contrary to federal bankruptcy law.

(16) As is well known, not all debts can be discharged in bankruptcy. Those that cannot be discharged are set forth in the Bankruptcy Code, 11 U.S.C. § 523 (1994). Among the nondischargable debts is a debt for child support. *Id.* § 523(a)(5). When is the determination made that a debt is not dischargeable? For some nondischargeable debts, such as debts resulting from fraud, *see id.* § 523(a)(2), (4), or willful injury, *see id.* § 523(a)(6), the creditor must promptly claim in the bankruptcy proceeding itself that the debt is not dischargeable. *See* Fed. R.Bankr.P. 4007(c) (complaint to determine dischargeability pursuant to Section 523(c) must be filed within 60 days following first date set for creditors' meeting); 11 U.S.C. § 523(c)(1) (debtor is discharged from debts specified in Section 523(a)(2), (4), and (6), unless creditor claims nondischargeability.) For other nondischargeable debts, however, a complaint may be filed at any time. *See*

Fed.R.Bankr.P. 4007(b). Moreover, the determination of the dischargeability of such debts can be by a court other than the bankruptcy court. The advisory committee note to Rule 4007(b) states:

> Subdivision (b) does not contain a time limit for filing a complaint to determine the dischargeability of a type of debt listed as nondischargeable under § 523(a)(1), (3), (5), (7), (8), or (9). Jurisdiction over this issue on these debts is held concurrently by the bankruptcy court and any appropriate nonbankruptcy forum.

A state court of general jurisdiction would have jurisdiction to determine the dischargeability of an alleged debt for child support. *See* 2 Daniel R. Cowans, *Cowans Bankruptcy Law and Practice* § 6.10, at 11 (6th ed. 1994).

(17) The law is nicely summarized by *In re Galbreath,* 83 B.R. 549, 551 (Bkrtcy.S.D.Ill. 1988):

> Under Bankruptcy Rule 4007(a), the debtor, as well as any creditor, may file a complaint in the bankruptcy court to obtain a determination of dischargeability. Thus, the debtor may seek a determination that a particular debt is dischargeable to avoid the possibility of an enforcement action in the state court following the bankruptcy proceeding. In addition, since, under Bankruptcy Rule 4007(b), there is no time limit for seeking a determination of dischargeability as to debts other than those of § 523(a)(2), (4) and (6), the debtor retains the right to remove a subsequent proceeding brought in a nonbankruptcy court, if no determination of dischargeability has been made in the previous bankruptcy proceeding. 8 *Colliers on Bankruptcy,* § 4007.03, at 4007–6 (15th ed. 1987). If, however, the debtor has neither sought a determination of dischargeability in the bankruptcy proceeding nor acted to have the subsequent enforcement proceeding removed to bankruptcy court, the nonbankruptcy court has jurisdiction to decide the dischargeability of such debts at the creditor's behest once the automatic stay has terminated upon conclusion of the bankruptcy proceeding. *Id.*

*Accord In re Marriage of Henderson,* 225 Cal.App.3d 531, 275 Cal.Rptr. 226, 228 (1990); *see* 9 *Collier on Bankruptcy* ¶ 4007.02, at 4007–4 (15th ed. 1996).

(18) Here, Father has pointed to no evidence that anyone sought a determination in the bankruptcy proceeding regarding dischargeability of the challenged debt. It was not enough for Father simply to list the debt in his bankruptcy petition. Again, we quote from *In re Galbreath:*

> In the instant case, there had been no prior determination of dischargeability in debtors' bankruptcy proceeding, as neither debtors nor the Department sought such a determination. While debtors assert that they did, in fact, raise the issue of dischargeability by listing the Department as a creditor in their bankruptcy petition, Bankruptcy Rules 4007 and 7001(6) specifically require that any request to determine dischargeability take the form of an adversary proceeding. *See* 9 *Collier on Bankruptcy,* § 7001.09, at 7001–21 (15th ed. 1987). Debtors here filed no complaint to determine dischargeability in their prior bankruptcy proceeding, and they thus failed to raise the issue of dischargeability in that proceeding.

83 B.R. at 551.

(19) In short, the district court had jurisdiction to determine the dischargeability of the debts for medical and counseling services. Father does not challenge the factual basis of the district court's determination. We therefore affirm the district court in this regard.

### III. CONTEMPT

▇ (20) Paragraph 21 of the district court's order states that Father violated the 1995 stipulated order and "therefore is in contempt of this Court." On grounds that are not totally clear to this Court, Father challenges the contempt. He also contends that as a result of the finding of contempt, he was required to pay Mother's attorney's fees for the hearing on his motion.

(21) The district court's order, however, clearly states that the reason for the award of attorney's fees is that a prior agreement

between the parties so provided. As far as we can determine, the district court's finding of contempt carried no consequences to Father. The language in Paragraph 21 that Father was in contempt of court is therefore surplusage and should be stricken on remand. *Cf. Paulos v. Janetakos*, 43 N.M. 327, 329, 93 P.2d 989, 989–90 (1939) (findings without legal consequence may be treated as surplusage and disregarded in that action and in subsequent litigation).

## IV. TRANSFER TO TENNESSEE COURT

■ (22) Paragraph 25 of the district court's order states as follows:

Sole custody of the minor child being with [Mother] who resides in Nashville, Tennessee, and the residence of the child now having been in Nashville since August 1995, with all significant contacts for the child in Tennessee, this cause is most appropriately before the family division of the Metro Court of Davidson County, Nashville, Tennessee, under applicable state and federal laws relating to child custody and enforcement jurisdiction. Following the issuing of notice for wage withholding and filing of the same with the Clerk of Court, such cause should therefore be and is so transferred to Tennessee for all future matters.

Father contends that the district court had no authority to transfer jurisdiction of the case to another state. We agree.

(23) The Uniform Interstate Family Support Act, NMSA 1978, §§ 40–6A–101 to –903 (Repl.Pamp.1994), and the Child Custody Jurisdiction Act, §§ 40–10–1 to –24 (Repl. Pamp.1994), provide for coordination between courts of different states in handling child support and custody matters. For example, under the Child Custody Jurisdiction Act a district court "may decline to exercise its jurisdiction any time before making a decree if it finds that it is an inconvenient forum to make a custody determination under the circumstances of the case and that a court of another state is a more appropriate forum." Section 40–10–8(A). We find no authority, however, for the district court's order transferring this case to the courts of

Tennessee. We therefore reverse and remand with instructions to delete from the order the provision transferring this case to Tennessee.

## V. CONCLUSION

(24) For the above reasons we affirm the order of the district court except that we reverse and remand with instructions to the district court to (1) recalculate child support without consideration of the monthly expense for "sports," (2) delete the language in Paragraph 21 finding Father in contempt, and (3) delete the language in Paragraph 25 transferring jurisdiction to Tennessee. Although the judge who entered the order under appeal now sits on our Supreme Court, there is no need for a new trial or further evidentiary proceedings, *cf. Smith v. Trailways, Inc.*, 103 N.M. 741, 748, 713 P.2d 557, 564 (Ct.App. 1986) (requiring new trial on one issue because of departure of judge who had tried the case); the specificity of our instructions should enable a present member of the district court to comply with the mandate. Finally, we award Mother $500 in attorney's fees on appeal.

(25) **IT IS SO ORDERED.**

DONNELLY and BUSTAMANTE, JJ., concur.

## APPENDIX

IN THE COURT OF APPEALS OF THE
STATE OF NEW MEXICO

IN THE MATTER OF THE COURT
OF APPEALS CASELOAD.

No. 1–21

Filed Oct. 17, 1995
*ORDER*

This matter having come before the Court upon the Court's evaluation of the expedited bench decision program initiated by Order No. 1–19 in March of 1993 and expanded at the end of 1993, and the Court being of the opinion that the program has outgrown the order adopting it, but that the program should be continued and expanded, and

therefore that Order No. 1–19 should be modified,

IT IS THEREFORE ORDERED THAT:

1. The Court of Appeals may, at its option, assign any case on its docket to the expedited bench decision program at the time of calendaring a case to the general or legal calendar, or the parties or one of them may move for assignment of a case to the expedited bench decision program at any time.

2. Parties may file written objections, specifying in detail their objections to their case being assigned to the expedited bench decision program. However, the decision as to whether the case shall remain in the program shall be made by the Court of Appeals.

3. The following guidelines shall control preparation of cases assigned to the expedited bench decision program and scheduling of them for argument, to the extent that the guidelines apply given the timing of the assignment of the case to the program:

a. Transcript and exhibit preparation and filing shall be in accordance with the usual Rules of Appellate Procedure;

b. Briefing shall be in accordance with the usual Rules of Appellate Procedure, except that, absent permission from the Court, the parties shall take only 20, rather than 30 days, for completion of major briefs, and that the parties shall limit their briefs to 20, rather than 35, pages for major briefs and 10 pages for reply briefs; and

c. The case shall be expedited and shall be submitted to a panel of judges for decision at the Court's next available submission date. Oral argument shall be scheduled as a matter of course at the next argument calendar after submission.

4. The following guidelines shall govern argument and decision in cases assigned to the expedited bench decision program:

a. Argument shall be before a panel of three judges of the Court of Appeals or two judges of the Court of Appeals and one justice of the Supreme Court.

b. The panel shall decide the case from the bench, either immediately after the argument or after a short recess if appropriate. By agreement of the panel, one of the judges of the Court of Appeals may be selected to orally state the reasons for the decision if the decision is made from the bench or write a brief decision explaining the panel's disposition and rationale or both. The written decision (which may be an edited transcript of the oral decision), including any concurrences or dissents, is expected to be filed on or before 5:00 p.m. on the next business day following the argument, and in no event shall it be filed later than seven days after the argument unless pursuant to paragraph 6 below.

c. In most cases in this program, it is anticipated that the case will be decided by decision which will not be considered of any precedential value for any other case. However, in appropriate cases, the panel may issue formal opinions that will be of precedential value.

d. In all cases that are remanded for retrial or further proceedings, the explanation of the Court's decision will be sufficiently detailed for the guidance of the trial court and counsel.

e. In the event that a majority of the panel cannot agree as to the disposition of the case, the case will be promptly removed from the expedited bench decision program.

5. The parties will retain their rights to seek rehearing and certiorari. If a Supreme Court justice has participated in the decision, he or she shall not participate in the proceedings on certiorari.

6. Notwithstanding the requirements of paragraph 4, in the event one member of the panel feels strongly that additional time is needed in order to render a reasoned decision, the time constraints set forth above may be expanded, provided, however, the case shall be given the highest priority and a decision rendered at the earliest possible date.

/s/ Rudy S. Apodaca
RUDY S. APODACA, Chief Judge

/s/ Thomas A. Donnelly
THOMAS A. DONNELLY, Judge

/s/ A. Joseph Alarid
A. JOSEPH ALARID, Judge

/s/ Harris L Hartz
HARRIS L HARTZ, Judge

/s/ Lynn Pickard
LYNN PICKARD, Judge

/s/ Bruce D. Black
BRUCE D. BLACK, Judge

/s/ Benny E. Flores
BENNY E. FLORES, Judge

/s/ Richard C. Bosson
RICHARD C. BOSSON, Judge

/s/ James J. Wechsler
JAMES J. WECHSLER, Judge

/s/ Michael D. Bustamante
MICHAEL D. BUSTA-MANTE, Judge

Approved:

/s/ Joseph F. Baca
JOSEPH F. BACA, Chief Justice.