2005-NMCA-008

104 P.3d 559

**Maurina Gonzales KLINKSIEK,**
**Petitioner–Appellee,**

v.

**Stephen Alexander KLINKSIEK,**
**Respondent–Appellant.**

No. 23,683.

Court of Appeals of New Mexico.

Nov. 24, 2004.

Nancy Ann Richards, Las Vegas, NM, for Appellee.

Edward Ricco, Rodey, Dickason, Sloan, Akin & Robb, P.A., Albuquerque, NM, for Appellant.

## OPINION

VIGIL, Judge.

{1} Appellant Stephen Klinsiek's motion for rehearing is denied. The opinion filed in this case on August 23, 2004, is withdrawn and this opinion is substituted in its place.

{2} Father appeals from a district court order awarding child support arrears, establishing Father's ongoing child support obligations, and awarding attorney fees to Mother. Father contends the district court erred in: (1) excluding rent Mother received from a tenant from her gross income for child support purposes; (2) denying Father any credit for travel expenses to have visitation with his children; (3) allowing Mother to claim work-related child care expenses for a full year, when she worked only during part of the year; and (4) awarding attorney fees to Mother. We hold that the district court erred in excluding all of the rental payments from Mother's gross income and that the wrong factors were considered in refusing to allow Father any travel expense credit. We hold that the district court did not abuse its discretion in allowing Mother the work-related child care expenses, and in awarding attorney fees to Mother. However, since we reverse on two of the four issues, we remand for the district court to consider an adjustment of the amount of attorney fees.

## BACKGROUND

{3} When they divorced in 1997, Mother and Father agreed on the division of their community property and liabilities, and on the custody and support of their two minor children. The district court approved their stipulations in the final decree. They were subsequently able to reach agreements that were approved by the district court when Mother wanted to move to Virginia with the children, and also when other disputes subsequently arose. Although the original child support agreement between the parties slightly deviated from the child support guidelines, subsequent agreements between the parties specifically stated child support was to be consistent with the child support guidelines. In 2001, Mother and Father were unable to agree on what Father's past and future child support obligations were under the last agreement, and they filed cross motions for the district court to decide the dispute. At all material times, Father was enrolled as a doctoral candidate in physics at the University of New Mexico, and he was employed as a graduate research assistant. Mother was also attending college, majoring in geology and minoring in anthropology. Following a trial on the merits, the district court assessed child support arrears against Father, determined his ongoing child support obligations, and awarded Mother attorney fees. Father appeals.

## DISCUSSION

### A. The District Court Improperly Excluded All Rent from Mother's Gross Income

■ {4} The determination of child support is within the district court's discretion and we review it on appeal only for an abuse of discretion. *Styka v. Styka*, 1999–NMCA–002, ¶ 8, 126 N.M. 515, 972 P.2d 16. However, that discretion must be exercised in accordance with the child support guidelines. *Id.* "[T]he trial court abuses discretion when it applies an incorrect standard, incorrect substantive law, or its discretionary decision is premised on a misapprehension of the law." *Aragon v. Brown*, 2003–NMCA–126, ¶ 9, 134 N.M. 459, 78 P.3d 913. To the extent that Father's appeal requires us to determine questions of law, we review these questions de novo. *Quintana v. Eddins*, 2002–NMCA–008, ¶ 9, 131 N.M. 435, 38 P.3d 203.

{5} The divorce decree approved the property settlement, which divided the community assets and debts. Mother was awarded real property and a building valued at $125,000, and she was obligated to pay an interest-free loan of $70,000, secured by a mortgage on the property. The loan was made by Mother's parents to the parties while they were married. Mother rented the building to a tenant for $700 per month for twenty-eight months for a total of $19,600. Mother testified she turned the rental payments over to her parents, who applied them to pay the cost of maintenance, insurance, taxes, and other expenses related to the upkeep of the building, and to reduce the mortgage debt. While it is unclear how the expenses of maintaining the building were managed or accounted for, Mother said her mortgage debt was reduced from $70,000 to $58,800.

{6} In calculating Mother's gross income, the district court completely excluded the rent payments she received because all the money was used "to pay the outstanding mortgage and to defray taxes, maintenance and other expenses related to the building; and the property has not appreciated since the divorce, and prospects for any future appreciation are not good." Father contends that the district court's determination was based on a misinterpretation of the applicable statute. We agree.

■ {7} "In any action to establish or modify child support, the child support guidelines as set forth in this section shall be applied to determine the child support due and shall be a rebuttable presumption for the amount of such child support." NMSA 1978, § 40–4–11.1(A) (1995). To determine the "rebuttable presumption" of the child support due, the district court must first determine the gross income of both parents. Section 40–4–11.1(K). "Gross income" means "income from any source," Section 40–4–11.1(C)(2), and rent is specifically included: "[F]or income from ... rent ... 'gross income' means gross receipts minus ordinary and necessary expenses required to produce

such income, but ordinary and necessary expenses do not include expenses determined by the court to be inappropriate for purposes of calculating child support." Section 40–4–11.1(C)(2)(b). Pursuant to the plain language of Section 40–4–11.1(C)(2)(b), the rent payments Mother received constitute "gross receipts" in calculating her "gross income."

{8} We next determine whether all the rental payments Mother turned over to her parents constitute "ordinary and necessary expenses" to produce the rental income. We hold they do not. Before Mother turned over any payments to her parents, she had an equity of $55,000 in the property and building, and since this was an interest-free loan, all payments made by Mother to her parents which reduced the principal mortgage indebtedness, increased her equity in the property. In the present case, the district court appears to have determined it necessary to deviate from the guidelines by excluding the mortgage payments from "gross receipts" and justifying the deviation on the ground that the value of the property had not appreciated and was not likely to appreciate in the future. The district court erred in failing to include in "gross receipts" to Mother any payments that increased Mother's equity in the property even if the value of the property decreased. There is no evidence showing that the mortgage payments did not increase Mother's equity in the property. *See Merrill v. Merrill,* 587 N.E.2d 188, 190 (Ind.Ct.App.1992) (stating that payment on principal of loan for business and real estate venture increases net worth of parent in child support proceeding); *Zakrowski v. Zakrowski,* 594 N.E.2d 821, 824 (Ind. Ct.App.1992) (stating that in properly allocating mortgage principal and interest, payments of principal may be considered contributions to parent's net worth, rather than ordinary and necessary business expenses under child support guidelines); *Schubert v. Tolivar,* 905 S.W.2d 924, 929 (Mo.Ct.App. 1995) (affirming trial court deduction for interest payments on rental property mortgage but not on principal payments, because principal payments increase asset value); *Barham v. Barham,* 127 N.C.App. 20, 487 S.E.2d 774, 778 (1997) (reaffirming that mortgage principal payments on rental property are not "ordinary and necessary" under state child support guidelines because they constitute value which is retained).

{9} It is clear to us that the district court must reconsider whether any of the rental payments can or should be excluded from Mother's gross income. All the rental payments to Mother are "gross receipts" to Mother. Mother is entitled to deduct from the "gross receipts" the "ordinary and necessary expenses" required to produce the rental income to determine her "gross income" from the rent. "The parent claiming a business expense must show not only that it is ordinary and necessary to the business, but also that it is irrelevant to calculating support obligations." *Jurado v. Jurado,* 119 N.M. 522, 530, 892 P.2d 969, 977 (Ct.App. 1995). Such expenses include, but are not necessarily limited to, expenses for repairs, property management and leasing fees, real estate taxes, and insurance. *See Barham,* 487 S.E.2d at 778. However, the district court never ruled on what expenses, if any, Mother is entitled to deduct. Furthermore, this record is not clear on how the expenses of maintaining the building and property were managed or accounted for. Mother will be given an opportunity on remand to introduce evidence on the "ordinary and necessary" expenses she asserts should be deducted from her "gross receipts," consistent with Section 40–4–11.1(C)(2)(b). *See Jurado,* 119 N.M. at 530, 892 P.2d at 977 (remanding for a determination, pursuant to Section 40–4–11.1(C)(2)(b), of how much of the business's income was required to be reinvested as an ordinary and necessary expense which would be excluded from the father's gross income for child support purposes where the father was under-compensated from that business income); *Roberts v. Wright,* 117 N.M. 294, 297–98, 871 P.2d 390, 393–94 (Ct.App.1994) (holding that the expense of purchasing inventory could be deducted from gross income for child support purposes as an ordinary and necessary expense under Section 40–4–11.1(C)(2)(b) where the purchase was "reasonably necessary to sustain the one contract that made [the] business successful").

{10} Application of Section 40–4–11.1(C)(2)(b) establishes a rebuttable presumption of Mother's gross income from the rent to determine child support. Section 40–4–11.1(A). However, other factors may have a bearing on the amount of child support. *See Henderson v. Lekvold,* 99 N.M. 269, 271, 657 P.2d 125, 127 (1983). Mother argues that *Jurado, Roberts,* and *Major v. Major,* 1998–NMCA–001, 124 N.M. 436, 952 P.2d 37, involved businesses and parents who were "self-employed," whereas her rental property in this case cannot be considered as a business in the same sense. She further argues that the principal question in determining child support is the actual cash flow or money reasonably available to apply towards support of the children, *see id.* ¶ 12, and that a mechanical application of the statute ignores the reality of her economic situation. The child support guidelines allow Mother to make a proper showing that there should be a deviation from the presumptive amount of her gross income. NMSA 1978, § 40–4–11.2 (1989) states:

> Any deviation from the child support guideline amounts set forth in Section 40–4–11.1 NMSA 1978 shall be supported by a written finding in the decree, judgment or order of child support that application of the guidelines would be unjust or inappropriate. Circumstances creating a substantial hardship in the obligor, obligee or subject children may justify a deviation upward or downward from the amount that would otherwise be payable under the guidelines.

{11} Mother will also be allowed to establish, if she can, that deviation from the guidelines is appropriate under Section 40–4–11.2, and the district court, if warranted by the evidence, has discretion to make such a finding. *See generally Jurado,* 119 N.M. at 529–30, 892 P.2d at 976–77; *see also* § 40–4–11.1(A) ("Every decree or judgment of child support that deviates from the guideline amount shall contain a statement of the reasons for the deviation.").

{12} The order of the district court is reversed and the case remanded for a redetermination of Mother's gross income and any recalculation of child support that may be required upon the redetermination of gross income.

**B. The District Court May Consider Father's Visitation–Related Travel Expenses When Computing Father's Child Support Obligations**

■ {13} We review the district court's denial of Father's travel-related expenses to exercise visitation with his children for an abuse of discretion. *See Styka,* 1999–NMCA–002, ¶ 8, 126 N.M. 515, 972 P.2d 16 ("The setting of child support is . . . reviewed on appeal only for an abuse of that discretion."). "An abuse of discretion occurs if the decision is against the logic and effect of the facts and circumstances of the case." *Bustos v. Bustos,* 2000–NMCA–040, ¶ 24, 128 N.M. 842, 999 P.2d 1074.

{14} Since his children no longer reside in New Mexico, Father asked for a credit of $2000 against his child support arrears for visitation-related travel expenses and for an allowance of $102 per month against future child support payments to cover the cost of travel for visitation. *See* § 40–4–11.1(I)(3) (stating child support may include payment of "transportation and communication expenses necessary for long distance visitation or time sharing"). Mother agreed with Father. Specifically, she requested that Father get a travel credit of $39 per month for the year 2000, and for the year 2001, she requested that Father get a $102 credit per month for travel expenses. She also asked the district court to conclude that "Father is entitled to a reasonable credit against child support arrears for actual travel expenses," and that the district court "grant Father a $2000 credit against child support arrears from July, 1997 through calendar year 2001." On appeal, Mother "acknowledges that Father should be given credit for actual travel costs with respect to arrears and future travel expenses."

{15} Related to this travel expense issue is a parenting plan approved by the court which provided that the parents would not unilaterally make a major change affecting the children in the areas of education or major recreational activities. Mother enrolled the children in recreational activities and music

lessons in Virginia and asked that Father help pay for these expenses in addition to the basic child support. Father argued that since he did not consent to the recreational activities and music lessons as required by the parenting plan, he should not have to help pay for them. Mother replied that the children's activities in Virginia were not new activities but ones in which the children had engaged before the divorce and therefore he should have to contribute to their cost beyond the basic support. The district court agreed with Father and found that the "activities for which [M]other is seeking reimbursement were not discussed with [F]ather and were not agreed upon by [F]ather." However, it then ruled that Mother had paid the costs

> that benefitted the children then, now and for the rest of their lives, and [F]ather is unwilling to pay a share of those costs, so [F]ather will provide a benefit to the children in another way by paying his own transportation costs for child visitation in the past and in the future.

{16} The district court order combines several related concepts: the role of recreational expenses and music lessons in computing child support, whether travel expenses can be awarded to reduce child support, and the role of the parties' agreement. We address each.

{17} Recreational expenses are included within the basic child support provided by the child support guidelines. In *Rosen v. Lantis*, 1997–NMCA–033, ¶ 10, 123 N.M. 231, 938 P.2d 729, we agreed that there is no statutory authority to add "sports" as an additional expense to be shared beyond basic child support. "The [child support] statute lists only a few expenses that can justify exceeding basic child support. Recreational activities is not one of the listed categories." *Id.* We added, "[t]he child support awarded under the guidelines should be adequate to feed and shelter the children, and to provide for recreational activities." *Id.* ¶ 11. The district court's judgment does not indicate whether the child support arrears include the costs of recreational activities above the basic support.

{18} Educational expenses are likewise provided for within basic child support because Section 40–4–11.1(I)(2) provides that the payment of "extraordinary educational expenses" that are "not covered by the basic child support obligation" may be added to the child support. However, the district court did not make a finding on whether the music lessons are recreational expenses, educational expenses, or extraordinary educational expenses. We have no authority to supply missing findings not made by the district court. *Rosen*, 1997–NMCA–033, ¶ 12, 123 N.M. 231, 938 P.2d 729. How these expenses are characterized has an impact on how the district court exercises its discretion in its overall evaluation of what child support is appropriate. We must therefore remand the case for a determination of these issues.

{19} The statute relating to travel expenses is not clear. Section 40–11.1(I)(3) states that child support may also include "transportation and communication expenses necessary for long distance visitation or time sharing." Father seeks an expense deduction or credit, not "payment" of child support in connection with his travel for visitation with his children. We assume that this provision was intended to include such expenses in considering how much child support is payable, permitting the court to reduce the child support obligation by an amount required for the travel of a parent to visit a child. We also assume that such a determination, like all other determinations relating to child support, is committed to the district court's discretion. *See Styka*, 1999–NMCA–002, ¶ 8, 126 N.M. 515, 972 P.2d 16. Again, the court made no finding on this question consistent with Section 40–4–11.1(I)(3), so a remand is necessary.

{20} Finally, the parties have agreed that Father should be entitled to a credit of $2000 against the child support arrearages for visitation-related travel expenses and to an allowance of $102 per month in the future for such expenses. Parties can agree to a waiver of child support arrears. *See Williams v. Williams*, 109 N.M. 92, 99, 781 P.2d 1170, 1177 (Ct.App. 1989) (stating that an agreement to waive child support arrearages already accrued

constitutes a valid waiver to collect these arrearages as long as the agreement is supported by sufficient consideration and does not infringe on the rights of others, as well as from intentional conduct or acts inconsistent with claiming the legal right). The fact that the parties have agreed to offset the arrears will not dictate to the district court how it must exercise its discretion. *See Ottino v. Ottino,* 2001–NMCA–012, ¶ 25, 130 N.M. 168, 21 P.3d 37 (stating that an agreement cannot be used to control the discretion of the court and deny the right of the court to exercise its statutory powers). We reiterate the overarching principle where child support is involved: "The paramount concern is the welfare of the child." *Spingola v. Spingola,* 91 N.M. 737, 743, 580 P.2d 958, 964 (1978). Of course, any "adequate standard of support for children [is] subject to the ability of parents to pay." Section 40–4–11.1(B)(1).

{21} We remand to the district court to reconsider and enter findings in regard to Father's obligation for arrearages and future child support in accordance with this opinion's discussion of recreational, educational, and travel expenses and the parties' agreements regarding those expenses.

### C. The District Court Did Not Err in Allowing Mother to Claim Work–Related Child Care Expenses for a Full Year When Mother Was Actually Employed During Only a Few Months of the Year, But Was Attending College

{22} We determine whether the law was correctly applied to the facts by the district court in making the award of work-related child care expenses, and we view the facts in a manner most favorable to Mother, the prevailing party, on this issue. *See Alverson v. Harris,* 1997–NMCA–024, ¶ 6, 123 N.M. 153, 935 P.2d 1165.

{23} Mother claimed work-related child care expenses for each year after the divorce except 1999, when she did not work at all. In 1997, 1998, and 2000, Mother worked for three or four months per year. She incurred child care expenses for all twelve months of these years. Mother averaged her child care expenses each year and used the average monthly child care amount on her child support worksheets as the basis for her claimed child care expenses. She divided her annual child care expenses in half before averaging them, on the theory that she was working only part-time while also taking courses toward her college degree. For example, in 2000, Mother incurred child care costs of $4350; she averaged half of that amount over a twelve-month period and claimed $181 per month in child care expenses for that year. The district court adopted Mother's approach.

{24} Father concedes that if Mother is entitled to claim child care expenses incurred while attending college in good faith pursuit of a reasonable and attainable goal of future employment at a significantly higher wage than she reasonably could be expected to earn without such education, then the district court's approach "achieves a rough justice." In fact, Mother may well have been entitled to all of the child care expenses by attending college under these circumstances. *Id.* ¶ 22. However, Father argues that Mother did not make the *Alverson* showing of a reasonable and attainable goal of higher wages by going to college, because when asked about the expected date of her graduation, she responded, "I can't promise things for sure." However, she only had fifteen hours remaining in her program of study at the time of the trial. Further, Father argues, when she was asked what she was planning to do after obtaining her degree, Mother only replied she was majoring in geology and minoring in anthropology.

{25} We reject Father's argument. The district court made a specific finding that Mother "had to go to school in order to get an education that would allow her to earn a living that would be sufficient to support herself and her children." As in *Alverson,* a finding that Mother's college education will increase her earning capacity can properly be implied from the district court's finding. *Id.* ¶ 21. Furthermore, there is nothing in this record to show Mother is not attending college in good faith to obtain future employment at a higher wage than she could obtain without the education. The public policy of New Mexico is to encourage parents to in-

crease their earning capacity by obtaining additional education, thereby leading to an increase in the total support their children receive. *Id.* ¶ 13.

{26} Mother now argues on appeal that she could have claimed an allowance for all of her child care costs. *See* § 40–4–11.1(H); *Alverson,* 1997–NMCA–024, ¶ 22, 123 N.M. 153, 935 P.2d 1165. She also now argues, without citing authority, that because one of the children was under six years of age, she could have insisted on staying home to care for her instead of going to school and working. Therefore, she asserts, she could have asked for all of her child care expenses, and she is entitled to at least the one-half of child care expenses she was awarded. We decline to address these arguments. *See State ex rel. State Highway Dep't v. Yurcic,* 85 N.M. 220, 224, 511 P.2d 546, 550 (1973) (stating issue waived where no cross appeal); *City of Sunland Park v. Macias,* 2003–NMCA–098, ¶ 20, 134 N.M. 216, 75 P.3d 816 (stating appellate court will not consider propositions in briefs that are unsupported by citation to authority).

{27} For the reasons stated above, we affirm the district court's order on child care expenses.

### D. The Award of Attorney Fees

{28} The district court awarded Mother $2100, plus gross receipts tax for attorney fees, citing the economic disparity between Mother and Father, and Father's failure to pay child support, which required Mother to file a motion for child support arrears. Father contends the award was improper. We review the district court decision for an abuse of discretion. *See Weddington v. Weddington,* 2004–NMCA–034, ¶ 25, 135 N.M. 198, 86 P.3d 623.

{29} Father acknowledges the financial disparity between the parties, and he also acknowledges that he stopped paying child support for a period of time under the advice of his attorney. These are proper considerations for a district court to consider in exercising its discretion to award attorney fees. *Id.* ¶ 27. However, another consideration which is applicable is Mother's degree of success. *Id.; see also* Rule 1–127 NMRA 2004 (enumerating factors that may be considered in awarding attorney fees in domestic relations cases, including disparity of parties' resources, prior settlement offers, total amount of fees and costs expended by each party, and success on the merits). We have partially affirmed and partially reversed the district court order. Under these circumstances, while we affirm the award of attorney fees, we hold that it is appropriate for the district court to reconsider the amount of the attorney fees. *See Rabie v. Ogaki,* 116 N.M. 143, 149, 860 P.2d 785, 791 (Ct.App. 1993) (stating district court should ordinarily reconsider award of attorney fees when judgment is reversed and matter is remanded).

### CONCLUSION

{30} The order of the district court is affirmed in part and reversed in part, and the case is remanded for further proceedings in accordance with our opinion.

{31} **IT IS SO ORDERED.**

WE CONCUR: JONATHAN B. SUTIN and IRA ROBINSON, Judges.