This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**ELLEN WYLIE,**

    Petitioner-Appellant,

v.                                       **NO. 29,908**

**JOHN WYLIE,**

    Respondent-Appellee.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Gerard J. Lavelle, District Judge**

Ellen Wylie
Albuquerque, NM

Pro Se Appellant

John Wylie
Albuquerque, NM

Pro Se Appellee

**MEMORANDUM OPINION**

**FRY, Chief Judge.**

    Ellen Wylie (Mother) appeals from the district court's three minute orders. [RP 46A-46B, 54, 61] Mother contends that the district court judge erred as follows: (1) in not requiring Father to pay for the parties' daughter Hannah's current college

education costs [DS 11]; (2) in not requiring Father to continue to pay $300 per month in child support for the parties' daughter Kate [DS 13]; (3) in not requiring Father to pay child support for Hannah until she reached twenty-one when, Mother asserts, the disturbances/violence between Father and Hannah were caused by Father not Hannah [DS 13]; (4) in not looking at Father's income and in not using the child support guidelines and worksheets to calculate child support in the past for Kate and presently for Hannah [DS 13]; and (5) in not listening to Mother or ruling in her favor, because the district court judge was biased in favor of Father [DS 13].

This Court's calendar notice proposed summary affirmance. [CN1] Mother has filed a memorandum in opposition that we have duly considered. [MIO] Unpersuaded, however, we affirm.

**DISCUSSION**

**A.    Standard of Review**

"The determination of child support is within the district court's discretion and we review it on appeal only for an abuse of discretion." *Klinksiek v. Klinksiek*, 2005-NMCA-008, ¶ 4, 136 N.M. 693, 104 P.3d 559 (filed 2004). "However, that discretion must be exercised in accordance with the child support guidelines." *Id.* Under NMSA 1978, Section 40-4-11.2 (1989), moreover, any deviation from the guidelines "shall be supported by a written finding in the decree, judgment or order

2

of child support that application of the guidelines would be unjust or inappropriate." In order to modify an existing order or judgment regarding child support, a substantial change in circumstances must be shown. *Bustos v. Bustos*, 2000-NMCA-040, ¶ 15, 128 N.M. 842, 999 P.2d 1074.

**B.     Child Support for Kate and Hannah (Issues 1,  2, 3, and 4)**

On February 12, 2009, Father filed a motion to adopt changes to the parties' December 14, 2007, parenting plan and child support obligation agreement (the parenting plan agreement) with regard to both Kate and Hannah.  [RP 22]   Mother filed a response, objecting to any changes to the parenting plan agreement and asking the district court to enforce its terms.  [RP 30]   After the district court entered its June 18, 2009 minute order regarding Kate and its July 1, 2009 minute order regarding Hannah, on July 28, 2009, Mother filed a motion to modify or enforce child support order, essentially asking the district court to reconsider the July 1 minute order with regard to Hannah. [RP 55]

The parenting plan agreement provides that Kate is to reside with Mother, and Father is to pay $300 per month in child support to Mother for Kate until Mother has obtained "gainful employment." [RP 14 ¶ 1] Father's obligation to pay child support to Mother for Kate is to cease when Kate reaches the age of eighteen.   [RP 14, ¶ 1] Kate was born on December 24, 1991.  [RP 12]

The parenting plan agreement provides that Hannah is to reside with Father. [RP 14, ¶1] If Father asks Hannah to move out of his home prior to her twenty-first birthday, in the absence of justification, "such as, Hannah [] becomes unstable and poses a real threat of violence to herself and her family," then Mother reserves the right to request child support for supporting Hannah, "if such becomes necessary." [RP 16] Hannah was born on January 9, 1990. [RP 12]

In the parenting plan agreement, the parties specifically agreed not to follow the child support guidelines because of the "nature of the custody issues," the parties' separate agreement providing that Hannah would live with Father and Kate would live with Mother, and "the age and employment consideration" of the parties. [RP 14, ¶ 1] In the final decree, the district court specifically explained that the child support guidelines were not appropriate in this case generally for the same reasons. [RP 20, No. 6] The parties further agreed to evenly split the other expenses relating to the care and support of both Hannah and Kate, as set forth in a table incorporated into the parenting plan agreement. [RP 14-15] The parties agreed to equal percentages rather than to specific dollar amounts, "because we do not have actual dollar figures to include on the worksheet." [RP 14, No. 4]

In support of his motion to adopt changes to the parenting plan agreement filed on February 12, 2009, Father reported that Kate had been living with Father rather

4

than Mother since February 2, 2009, that she would continue to reside with him, and that he would ask for no child support from Mother for Kate, but presumably wanted to cease paying child support to Mother for Kate. [RP 23, ¶ C] Father also reported that Hannah had become so unruly that a restraining order that restricted her from entering his house was needed and had been issued on January 27, 2009. [RP 23, ¶ D]

Mother's response requests that Father be required to continue to pay $300.00 per month as child support for Kate on the grounds that Father is simply trying to get out of his financial obligations to her, Father does not support Mother's parenting, Kate cannot safely reside at Father's house because Father does not consult Mother on decisions, and Father does not enforce curfew or other house rules. [RP 30-32] With regard to Hannah, Mother asserts that Father obtained a restraining order against Hannah in order to avoid his financial obligations to support Hannah until her twenty-first birthday under the parenting plan agreement and in order to get out of providing support for her while in college. [Id.] Mother's memorandum in opposition continues to raise the same contentions, including that Father obtained the restraining order against Hannah in order to relieve himself of his support obligations to her, that the basis for the restraining order has no merit, and that Mother understood the MSA as requiring Father to unconditionally continue to support Hannah until she is twenty-one. [MIO, 2] Mother further points out that she continues to have medical issues

and financial strain as a result and that Father has engaged in acts that are contrary to the MSA with regard to the support of his daughters, Hannah in particular. [Id.] Mother continues to request that the terms of the MSA regarding child support be enforced and appears to contend that the minute orders do not do so. [Id.]

As we discussed in the calendar notice, we are not persuaded that the terms of the MSA require Father to unconditionally continue to pay child support for Hannah. With regard to the validity of Father's restraining order against Hannah, another tribunal was persuaded as to the validity and necessity of the restraining order against her and the district court in this case considered Mother's allegations that Father merely obtained the restraining order to get out of his child support obligations to Hannah and ruled against Mother on this issue. As further discussed below, we decline to revisit these issues of the credibility of the witnesses. Moreover, as we discussed in the calendar notice, given the existence of the restraining order, the express terms of the MSA do not require Father to continue to provide support for Hannah. The district court determined that Kate no longer lives with Mother, and therefore, determined that Father's child support obligations to pay Mother for her support has ended. Under the circumstances, we remain persuaded that summary affirmance of the three minute orders is the appropriate and correct disposition.

As we discussed in the calendar notice, in the district court's June 18, 2009 minute order, Father was ordered to pay $850 in child support arrearages to Mother for Kate through June 2009. [RP 46A] Father was also ordered to make the remaining future child support payments for Kate to another family since Kate was apparently no longer residing with Mother or Father. [Id.] In the July 1, 2009 minute order, the district court found that Father had obtained the restraining order against Hannah because she "became unstable and engaged in behavior which posed a real threat of violence to [Father] and, therefore, [Father] was justified in asking Hannah to move from his home." [RP 54, No. 2] In accordance with the parenting plan agreement, therefore, the district court concluded that "[a]ny obligation [Father] might have had to provide post-minority support for Hannah is terminated based upon Hannah's threats of violence on January 27, 2009." [RP 54, No. 3] In the September 10, 2009 minute order, the district court denied Mother's July 28, 2009, motion to modify or enforce child support order, which we have construed as a motion to reconsider the July 1, 2009 minute order, noting that Hannah had reached the age of majority, that any obligation Father had had to support Hannah post-majority had terminated for the reasons set forth in the July 1, 2009 minute order, and that the court's jurisdiction regarding Hannah had ended. [RP 61-62]

We affirm the June 18 and the July 1 minute orders, which granted Father's February 12, 2009, motion to adopt changes to the parenting plan agreement regarding Father's support obligations for Kate and Hannah. The parties provided conflicting testimony regarding the reasons for Kate's moving out of Mother's residence and the basis for Father obtaining a restraining order against Hannah. Although Mother disagrees with the basis for the rulings, the district court as fact finder, however, resolved the conflicts in the evidence and weighed the testimony in favor of Father. *See, e.g.*, *Buckingham v. Ryan*, 1998-NMCA-012, ¶ 10, 124 N.M. 498, 953 P.2d 33 (filed 1997) ("[W]hen there is a conflict in the testimony, we defer to the trier of fact.").

That is, Father's payment of child support to Mother for Kate under the parenting plan agreement was based on Kate's residing with Mother. The district court found that Kate no longer resides with Mother. As such, Father is no longer obligated to pay Mother $300 in child support for Kate. Under the terms of the parenting plan agreement, Father's obligation to support Hannah until age twenty-one terminated if Father had justification for requiring Hannah to move out of his home. The district court found that Father was justified in requiring Hannah to move out because she had threatened him with violence and he had obtained a restraining order

8

against her. Thus, Father's obligation to support Hannah terminated after she reached majority but prior to age twenty-one.

We hold, therefore, that Father sustained his burden to show that a substantial change in circumstances had occurred in the living situations of both Hannah and Kate from the December 14, 2007, entry of the parenting plan agreement. *See Mintz v. Zoernig*, 2008-NMCA-162, ¶ 18, 145 N.M. 362, 198 P.3d 861 (discussing that in order to modify an existing child support order, a substantial change in circumstances must be shown and "[t]he burden of proof is on the moving party to satisfy the court that the circumstances have so changed as to justify the modification" (internal quotation marks and citation omitted)). To the extent that Mother's subsequent motion filed on July 28, 2009, was a request to the district court to reconsider its rulings in the June 18 and the July 1 minute orders, we hold that Mother did not provide a basis, such as new facts or changed circumstances, for the district court to do so. *See, e.g.*, *GCM, Inc. v. Kentucky Cent. Life Ins. Co.*, 1997-NMSC-052, ¶ 28, 124 N.M. 186, 947 P.2d 143 ("A district court has broad discretion in ruling upon a motion for reconsideration and will only be reversed for an abuse of that discretion.").

We affirm the June 18, July 1, and the September 10 minute orders.

**C.    The District Court's Bias Against Mother (Issue 5)**

In the docketing statement and the memorandum, Mother asserts that the district court judge was prejudiced against her and that he did not listen to her arguments that Father had caused the disturbances with Hannah. [DS 13] She points out that the district court may favor Father since Father works as a juvenile probation officer and may have worked with the district court judge. We disagree.

First, it appears that Mother's frustrations result from the district court's adverse rulings, which are insufficient to demonstrate bias. *See State v. Case*, 100 N.M. 714, 717, 676 P.2d 241, 244 (1984) (stating personal bias cannot be inferred from an adverse ruling). In this regard, moreover, we have duly considered Mother's contentions, and, based on our standard of review, we affirm the district court's rulings as based on and consistent with New Mexico law. Second, as we discussed above, it is for the district court as fact finder to weigh the evidence and the credibility of the witnesses. *See, e.g.*, *State v. Hernandez*, 115 N.M. 6, 20, 846 P.2d 312, 326 (1993) (stating that adverse rulings or enforcement of the rules does not establish judicial bias). Third, Mother asserts that the district court may be prejudiced or biased in favor of Father but recites to no particular facts and makes no specific showing in support of these assertions. *State v. Hoxsie*, 101 N.M. 7, 10, 677 P.2d 620, 623 (1984) (stating that, "[a]n assertion of prejudice is not a showing of prejudice"), *overruled on other grounds, Gallegos v. Citizens Ins. Agency*, 108 N.M. 722, 731, 779 P.2d 99,

10

108 (1989). Finally, comments by the district court criticizing a party do not demonstrate bias or improper judicial conduct. *See, e.g.*, *United Nuclear Corp. v. Gen. Atomic Co.*, 96 N.M. 155, 172-74, 629 P.2d 231, 248-50 (1980) (stating that rulings by the court rejecting a party's position, and criticism of counsel by the court, do not demonstrate bias).

**CONCLUSION**

We affirm the district court's rulings set forth in the June 18, July 1, and September 10, 2009 minute orders.

**IT IS SO ORDERED.**

_____
**CYNTHIA A. FRY, Chief Judge**

**WE CONCUR:**

_____
**RODERICK T. KENNEDY, Judge**

_____
**TIMOTHY L. GARCIA, Judge**

11